In re Helen Virginia HOMAN, Debtor.

Helen Virginia HOMAN, Plaintiff,

v.

KEMBA CINCINNATI CREDIT UNION, Defendant.

Bankruptcy No. 3–88–02192.
Adv. No. 3–89–0002.

United States Bankruptcy Court,
S.D. Ohio, W.D.

June 22, 1990.

Michael G. Weller, Centerville, Ohio, for debtor/plaintiff.

Stephen D. Miles, Dayton, Ohio, for defendant.

DECISION ON ORDER:

(1) GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT,

(2) GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT,

(3) SETTING PRETRIAL CONFERENCE AND

(4) REQUIRING FILINGS

THOMAS F. WALDRON, Bankruptcy Judge.

This proceeding, which arises under 28 U.S.C. Section 1334(b) in a case referred to this court by the Standing Order of Reference entered in this district on July 30, 1984, is determined to be a core proceeding pursuant to 28 U.S.C. Section 157(b)(2)(A) matters concerning the administration of the estate, (E) orders to turn over property of the estate, (K) determinations of the validity, extent, or priority of liens, and (O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor relationship.

## PROCEDURAL AND FACTUAL BACKGROUND

The debtor, Helen Virginia Homan filed a petition under Chapter 13 of the Bankruptcy Code on July 7, 1988. The debtor listed two debts owed to the defendant—an outstanding loan balance of five thousand, two hundred fifty-nine dollars ($5,259.00), which was secured by a lien on her automobile, and an outstanding loan balance of one thousand, five hundred dollars ($1,500), which was unsecured.

The defendant, Kemba Cincinnati Credit Union (Kemba), initially filed two proofs of claim on July 28, 1988—one for a secured claim of five thousand, eighty-two dollars and seventy-three cents ($5,082.73), which is not in issue in this proceeding, and another for an unsecured claim of one thousand, four hundred and fifty-eight dollars and ninety-seven cents ($1,458.97). Kemba filed an amended proof of claim on September 8, 1988 in which it designated the previ-

ously unsecured claim of one thousand, four hundred and fifty-eight dollars and ninety-seven cents ($1,458.97) as a claim secured by a "share pledge account". The debtor filed a Motion Objecting To Allowance Of Claim (Doc. 14 Case No. 3–88–02192), which was dismissed without prejudice to refiling for noncompliance with Local Bankruptcy Rule 5.6(b).[1] Debtor refiled her Motion Objecting To The Allowance of Claim (Doc. 18 Case No. 3–88–02192) objecting to Kemba's designation of the one thousand, four hundred and fifty-eight dollars and ninety-seven cents ($1,458.97) claim as secured. Kemba, in Creditor's Memorandum Contra To Debtor's Motion Objecting To Allowance Of Claim, stated that the one thousand, four hundred and fifty-eight dollars and ninety-seven cents ($1458.97) debt is partially secured to the extent of the debtor's funds on deposit because, pursuant to a standard provision contained in Kemba's loan agreement, the debtor pledged all deposits as security for the loan. The Debtor filed a Complaint For Contempt Sanctions For Violation Of Automatic Stay (Doc. 1) alleging that the defendant "froze" four hundred twenty-four dollars and ninety-nine cents ($424.99) that the debtor had on deposit with Kemba in her Christmas club account, thereby denying the debtor access to the funds. The parties filed an agreed statement of facts (Doc. 14). Defendant filed a Motion For Summary Judgment (Doc. 15) and the debtor filed Plaintiff's Motion For Summary Judgment (Doc. 16). Debtor also filed Plaintiff's Response To Defendant's Motion For Summary Judgment (Doc. 17). In ruling on these motions the court considered the above filings as well as Defendant's Exhibits Pursuant to Court Order (Doc. 20) and Citation of Authorities (Doc. 22).

## MOTIONS FOR SUMMARY JUDGMENT

Both the plaintiff and the defendant, in separate motions, pursuant to Fed.R.Civ.P. 56(c), made applicable to this proceeding by Bankruptcy Rule 7056, request an order granting summary judgment. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Material facts are those which "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *A.I. Root Co. v. Computer Dynamics, Inc.*, 806 F.2d 673, 675 (6th Cir.1986). The standard for granting summary judgment is essentially the same as the standard for granting a directed verdict: The court must decide "whether the evidence presents a sufficient disagreement ... or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2512. The Sixth Circuit in *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir.1989) noted the following:

> Read together, *Liberty Lobby* and *Celotex* stand for the proposition that a party may move for summary judgment asserting that the opposing party will not be able to produce sufficient evidence at trial to withstand a directed verdict motion. If, after a sufficient time for discovery, the opposing party is unable to demonstrate that he or she can do so under the *Liberty Lobby* criteria, summary judgment is appropriate.

The facts in this case are few, uncomplicated, and the parties have stipulated to them in their joint statement of facts (Doc. 14). The dispute centers around the legal principles to be applied to, and the legal conclusions to be drawn from, these facts. Summary judgment is appropriate in this proceeding.

---

1. Local Rule 5.6 Objections To Proofs Of Claim
(b) Each objection shall contain a concise statement of the grounds for which the objection is being asserted, and a specific request for how the claim shall be treated. The objection shall also state that a response must be filed and served within thirty (30) days of the date set forth on the certificate of service.

## ARGUMENT OF THE PARTIES

The essence of the plaintiff's argument is that the freeze imposed on the debtor's Christmas club account is tantamount to a setoff, and, because the defendant did not first seek relief from the automatic stay to setoff the funds, its actions violated 11 U.S.C. § 362(a)(7). The defendant argues that the debtor, under the doctrine of a common law pledge, granted the credit union a lien on all her funds on deposit with the credit union, and the defendant perfected this common law pledge by "retaining possession of the funds." Kemba further argues that it did not setoff the funds, but, in good faith compliance with 11 U.S.C. § 362, and on the belief that the defendant had a valid lien on the funds, froze the account in order to maintain the status quo and prevent the dissipation of the funds. Pursuant to an Order Setting Oral Arguments (Doc. 23), the court heard further amplification of both parties' positions.

## INTRODUCTION

Although the facts in this proceeding are few and uncomplicated, this proceeding presents difficult and complicated issues concerning an administrative freeze. The seemingly simple issues in this proceeding are surrounded by a thicket of competing, and frequently conflicting, Code provisions presenting no obvious path to a satisfactory resolution. An administrative freeze, as the term frequently appears in connection with bankruptcy cases, occurs when a financial institution, usually a bank or a credit union, upon receiving notice of a debtor's bankruptcy filing, prevents withdrawals from accounts that a debtor has at that institution. Typically, the debtor both owes the financial institution a debt and also has funds on deposit in a checking or savings account at the financial institution.

This issue has generated an abundance of case law with varied analyses. A number of courts have held that such a freeze is tantamount to an unauthorized setoff in violation of 11 U.S.C. § 362(a)(7). *United*
*States v. Reynolds,* 764 F.2d 1004 (4th Cir. 1985); *United States v. Norton,* 717 F.2d 767 (3rd Cir.1983); *In re New York City Shoes,* 78 B.R. 426 (Bankr.E.D.Pa.1987); *Crispell v. Landmark Bank (In re Crispell),* 73 B.R. 375 (Bankr.E.D.Mo.1987); *In re Wildcat Construction Co. Inc.* 57 B.R. 981 (Bankr.D.Vt.1986); *LHG Resources, Inc. v. First National Bank of Midland (In re LHG Resources, Inc.),* 34 B.R. 202 (Bankr.W.D.Texas 1983); *Cusanno v. Fidelity Bank,* 29 B.R. 810 (D.E.D.Pa.1983) *vacated and remanded without op.* 734 F.2d 3 (3rd Cir.1984).[2] Other decisions reflect the view that the administrative freeze promotes, rather than violates, the objective of the automatic stay by maintaining the status quo and preserving the assets of the estate until the court can determine the respective rights of the debtor and the bank. *In re Learn,* 95 B.R. 495 (Bankr.N.D.Ohio 1989); *Heckathorn Construction Company, Inc. v. Bass Mechanical Contractors, Inc., (In re Bass Mechanical Contractors, Inc.),* 84 B.R. 1009 (Bankr.W.D.Ark.1988); *Rio v. Army Aviation Center Federal Credit Union,* 82 B.R. 138 (D.M.D.Ala.1986); *Air Atlanta v. National Bank of Georgia,* 74 B.R. 426 (Bankr.N.D.Ga.1987), *aff'd,* 81 B.R. 724 (D.N.D.Ga.1987); *Williams v. American Bank of Mid–Cities (In re Williams),* 61 B.R. 567 (Bankr.N.D.Tex.1986); *Hoffman v. Portland Bank (In re Hoffman),* 51 B.R. 42 (Bankr.W.D.Ark.1985); *Bank of America National Trust and Savings Associations v. Edgins (In re Edgins),* 36 B.R. 480 (Bankr. 9th Cir.1984); *Teamsters Credit Union v. Lee (In re Lee),* 40 B.R. 123 (Bankr.E.D.Mich.1984); *Georgia Federal Bank v. Owens–Peterson (In re Owens–Peterson),* 39 B.R. 186 (Bankr.N.D.Ga. 1984); *Stann v. Mid American Credit Union,* 39 B.R. 246 (D.D.Kan.1984); *Kenney's Franchise Corp. v. Central Fidelity Bank,* 22 B.R. 747 (D.W.D.Va.1982). The split in authority results from differing interpretations of the interplay among the various provisions of the Code which impact on this issue: 11 U.S.C. § 362–the

---

**2.** Although *Cusanno* was vacated and remanded, it is among the early cases to discuss this issue and its analysis remains at the forefront of this
issue. *Cusanno* continues to be cited and its analysis discussed by case authorities and commentators.

automatic stay, § 363–cash collateral, § 506–secured claims, § 542–turnover and § 553–setoff.

## DECISION

This court employs the following five-part analysis in its discussion: 1) In a chapter 13 case, are a debtor's funds on deposit property of the estate protected by the automatic stay? 2) In this proceeding, are the funds on deposit secured by a lien pursuant to an Ohio common law pledge in favor of Kemba? 3) If the funds on deposit are not secured by a common law pledge, do the setoff provisions of the Bankruptcy Code allow Kemba to freeze the debtor's account without violating § 362(a)(7)? 4) If the freeze is not a setoff under Ohio law, and does not violate § 362(a)(7), is it a violation of § 362(a)(3)? 5) If the freeze is a violation of § 362(a)(3) what action could Kemba take to preserve such funds?

1. In a chapter 13 case, are a debtor's funds on deposit property of the estate protected by the automatic stay?

■ As the above discussion indicates much of the analysis involved in this issue turns on statutory interpretation of the pertinent Code provisions. Although the Supreme Court noted in *U.S. v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, ——, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989) that statutory interpretation must begin with the language of the statute, the Supreme Court also noted in *Kelly v. Robinson*, 479 U.S. 36, 107 S.Ct. 353, 358, 93 L.Ed.2d 216 (1986):

Of course, the "starting point in every case involving construction of a statute is the language itself." But the text is only the starting point. As Justice O'Connor explained last Term, " ' "In expounding a statute, we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy." ' " (citations omitted).

Upon the filing of a petition in bankruptcy an estate is created which consists of all the debtor's legal and equitable interests in property wherever located and by whomever held. 11 U.S.C. 541(a). When a peti-

tion is filed under Chapter 13, the estate is also comprised of all property which the debtor may acquire after the commencement of the case but before the closing, dismissal or conversion of the case. 11 U.S.C. 1306(a). The extensive scope of Section 541(a) clearly includes within its ambit the debtor's funds on deposit in a savings account. *Staats v. Meade (In re Meade)*, 84 B.R. 106, 108 (Bankr.S.D.Ohio 1988); *Hunter v. Klueter (In re Klueter)*, 77 B.R. 622 (Bankr.N.D.Ohio 1987); *Gilbert v. Osburn (In re Osburn)*, 56 B.R. 867 (Bankr.S.D.Ohio 1986). Thus, the funds on deposit in the savings account with Kemba, whether secured, unsecured or exempt, constitute property of the estate.

The filing of a petition also activates, immediately, the automatic stay. In *Matter of Brock*, 58 B.R. 797, 803 (Bankr.S.D. Ohio 1986) this court noted the following with respect to the stay:

[This] code section provides that at the moment the debtor files a bankruptcy petition, a congressionally mandated order is automatically entered by the court applicable to all entities which prevents the commencement or continuation, including the issuance or employment of process, of any judicial proceeding against the debtor that could have been commenced against the debtor, including the enforcement of any judgment against the debtor or against property of the estate; and, further prevents any act to obtain possession of property of the estate or to exercise control over property of the estate; and, prevents any act to collect or recover a claim against the debtor that arose before the filing of the bankruptcy petition.

Neither party suggests that this proceeding falls within one of the exceptions to the applicability of the automatic stay (362(b)), and accordingly, the automatic stay provisions are fully applicable to this proceeding.

2. In this proceeding are the funds on deposit secured by a lien pursuant to a common law pledge in favor of Kemba?

■ The credit union argues that the funds in question are secured by the com-

mon law doctrine of pledge recognized under Ohio law.

As a preliminary matter, the court notes that Ohio's enactment of the Uniform Commercial Code, (Ohio Revised Code Chapters 1301–1309) governs secured transactions. However, O.R.C. § 1309.04(K) (1984) excludes from its ambit an attempt to create a secured interest in "any deposit account". O.R.C. § 1309.01(A)(5) defines a "deposit account" as "a demand, time savings, passbook or like account maintained with a bank, savings and loan association, credit union, or like organization, other than an account evidenced by a certificate of deposit." Thus Article 9 of the UCC as enacted by the Ohio legislature is inapplicable. Nevertheless, O.R.C. § 1301.03 provides for the continued vitality of the general principles of law and equity and specifically provides that those principles should supplement Ohio's Uniform Commercial Code. As a result, the common law doctrine of pledge continues to have validity under Ohio law.

The debtor applied for and received what she designates in her schedules as a "signature loan" from Kemba Credit Union. According to the agreed statement of facts submitted by the parties, paragraph six of the loan agreement signed by the debtor states as follows:

Notwithstanding the provisions of paragraph 7, the undersigned, including any co-signer, hereby pledge all shares and deposits and payments and earnings thereon which I/we have or hereafter may have, whether held jointly or individually, as security for any and all monies advanced under this plan and interest accrued thereon and authorize the credit union to apply such shares, deposits and earnings to payment of said obligation. Such application may be pursuant to such pledge or as a right of offset. I/we further agree to pay all usual and customary cost of collection permitted by law.

A pledge under Ohio law has been described as a "bailment of personal property as security for some debt or engagement, or as a security interest in a chattel or an intangible represented by an indispensable instrument, the interest being created by a bailment for the purpose of securing the payment of a debt or the performance of some other duty." 83 O Jur.3d *Secured Transactions* § 41 (1988). Under Ohio law both delivery of the pledged property to the pledgee and possession of the pledged property by the pledgee are essential to effectuate a common law pledge. Possession results when the pledgee has "complete, unequivocal and exclusive" control of the pledged property. *Cissell v. First National Bank of Cincinnati,* 476 F.Supp. 474, 491 (S.D.Ohio 1979); *Hunt v. Bode,* 66 Ohio St. 255, 261, 64 N.E. 126 (1902); *Klaustermeyer v. The Cleveland Trust Company,* 89 Ohio St. 142, 146, 105 N.E. 278 (1913); *Pattison v. Dale,* 196 F. 5, 10 (6th Cir.1919), *aff'd,* 234 U.S. 399, 34 S.Ct. 785, 58 L.Ed. 1370 (1914).

An examination of the debtor's Christmas club account statements for the period 7/87–7/88, submitted as Joint Exhibit B, establishes that the debtor made frequent deposits and withdrawals from the Christmas Club account. The ability of the debtor-pledgor to withdraw funds at her convenience and to dissipate pledged property is inconsistent with the requirement that the credit union-pledgee exercise exclusive control over the pledged property. The history of the parties in connection with this account demonstrates that, under Ohio law, an effective common law pledge has not been established. (*Compare, Lubman v. Sovran Bank (In re A & B Homes, Ltd),* 98 B.R. 243, 245–248 (Bankr.E.D.Va.1989) where the passbook was in the sole possession of the creditor and the debtor was not permitted to make withdrawals at any time.)

The only evidence of any attempt by the defendant to exercise the required exclusive control and possession of the funds occurred when it placed the hold on the debtor's account, post-petition.[3] The defen-

---

**3.** To the extent that any factual dispute exists concerning the date on which the Credit Union placed the administrative freeze on the debtor's account, counsel for the Credit Union stated on

dant does not cite any other state or any federal statutory or caselaw authority for its assertion of a perfected consensual lien on the debtor's deposits. The court notes that while the Code's definition of a lien as a "charge against or interest in property to secure payment of a debt or performance of an obligation" 11 U.S.C. 101(33), could provide additional support for defendant's asserted interest in the funds, any attempted creation, perfection or enforcement of a lien against property of the estate or property of the debtor once a petition is filed is prohibited by 11 U.S.C. § 362(a)(4) [4] and § 362(a)(5) [5]. The defendant's position is not that the debtor's account was frozen in order to perfect Kemba's alleged lien, rather, the defendant urges that Kemba perfected its lien by *"retaining possession of the share account when the loan was made"* (emphasis supplied) (Doc. 18). As previously noted, this argument is not consistent with the requirements of Ohio law and the uncontroverted facts in this case. *See, In re Laues,* 90 B.R. 158, 161 (Bankr. E.D.N.C.1988); *Union Properties v. Baldwin,* 141 Ohio St. 303, 47 N.E.2d 983 (1943); *BancOhio National Bank v. Matar,* 30 Ohio App.3d 148, 506 N.E.2d 1221 (1986).

3. If the funds on deposit are not secured by a common law pledge, do the setoff provisions of the Bankruptcy Code allow Kemba to freeze the debtor's account without violating § 362(a)(7) [6]?

■ The bankruptcy Code recognizes and preserves a creditor's right of setoff under applicable nonbankruptcy law. § 553(a) provides:

Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such a creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case....

Further, § 506(a) [7] accords secured status to a claim subject to setoff under § 553. Additionally, § 542(b) [8] exempts a debt that

---

the record during oral argument that the Credit Union placed the administrative freeze on the account post-petition and refused the debtor access to the account in September, 1988.

**4.** 11 U.S.C. § 362(a) [prohibits]
(4) any act to create, perfect, or enforce any lien against property of the estate.

**5.** 11 U.S.C. § 362(a) [prohibits]
(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title.

**6.** § 362
(a) Except as provided in subsection (b) of this section a petition filed under section 301, 302, or 303 of this title ... operates as a stay ... of—
(7) the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor;

**7.** § 506 determination of secured status.
(a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent

that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim....

**8.** § 542 Turnover
(a) Except as provided in subsection (c) or (d) of this section, an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.
(b) except as provided in subsection (c) or (d) of this section, an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee, except to the extent that such debt may be offset under section 553 of this title against a claim against the debtor.
(c) Except as provided in section 362(a)(7) of this title, an entity that has neither actual notice nor actual knowledge of the commencement of the case concerning the debtor may transfer property of the estate, or pay a debt owing to the debtor, in good faith and other than in the manner specified in subsection (d) of this section, to an entity other than the trustee, with the same effect as to the entity making such transfer or payment as if the case under this title

may be setoff under § 553 from the general turnover requirement of § 542(a). Whatever the extent of the permissible statutory interpretations concerning setoff, that might be argued based on these sections, individually or in combination, the right of setoff is, by specific language contained in 542(c), 362(a)(7) and 553(a) subject to the provisions of 11 U.S.C. 362(a). Conditioning a creditor's exercise of a potential setoff to the Code's requirement that the creditor first obtain relief from the stay is consistent with an acknowledged purpose of the Code to grant a debtor an immediate breathing spell, free from creditor pressure. The importance of the automatic stay to the orderly and equitable distribution of the estate cannot be overemphasized. The legislative comments describe the stay as "one of the fundamental debtor protections provided by the bankruptcy law." H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 174–175 (1977) U.S.Code Cong. & Admin.News pp. 5787, 5963, 6135 reprinted in Norton Bankr.Code Pamphlet 1988–89 Ed. p. 191. The broad scope of the stay encompasses any type of action, formal or informal, against property of the estate (*In re Smith*, 876 F.2d 524, 525–26 (6th Cir. 1989), *Matter of Sams*, 106 B.R. 485, 489–91 (Bankr.S.D.Ohio 1989)); however, various other Code sections were enacted to grant relief to parties restrained by the automatic stay. 11 U.S.C. § 362(d) and (f) are specifically structured to provide any party in interest with the opportunity to obtain relief from the automatic stay. 11 U.S.C. § 362(e) strengthens this opportunity by requiring the Bankruptcy Court to promptly determine any motions seeking relief from the automatic stay. 11 U.S.C. § 362(f) provides that, in certain instances, the court can provide a party with relief from the stay without holding a hearing. *Matter of Brock*, 58 B.R. at 804.

It is important to note, however, that "within the Bankruptcy context, the right of setoff conflicts with the fundamental policy of equality of distribution." *In re Academy Answering Services, Inc.*, 90 B.R. 294, 296 (Bankr.N.D.Ohio 1988) and "[t]he application of setoff ... is permis-

concerning the debtor had not been com-

sive and lies within the equitable discretion of the trial court." *DuVoisin v. Foster (In re Southern Indus. Banking Corp.)*, 809 F.2d 329, 332 (6th Cir.1987).

Although setoff is recognized in the Code, it is established pursuant to nonbankruptcy law. In this proceeding, to determine whether a setoff has occurred, the court must consult Ohio law. The Sixth Circuit in *Baker v. National City Bank of Cleveland*, 511 F.2d 1016, 1018 (6th Cir. 1975), enunciated the rule which must be applied in determining whether a setoff occurred pursuant to Ohio law. The court stated that setoff occurs when (1) the decision to exercise the right is made; (2) some action which accomplishes the setoff is taken; and (3) a record is entered which evidences that the right of setoff has been exercised. Kemba argues that it only froze the debtor's account and took no further steps towards setoff, and thus, setoff did not occur pursuant to Ohio law.

Applying the *Baker* requirements to the facts of this proceeding, it is apparent that, without the required bookkeeping entry and actual debit from the debtor's account, Kemba's actions are insufficient under Ohio law to effectuate a setoff. As a result, Kemba's act of freezing the debtor's account is not a violation of § 362(a)(7), which prohibits setoff without obtaining relief from the stay. Kemba's position that it did not violate § 362(a)(7) is a correct conclusion; however, it is not a complete analysis of the applicable provisions of the automatic stay (*See* § 362(a)(3)).

4. If the freeze is not a setoff under Ohio law, and does not violate Section 362(a)(7), is it a violation of Section 362(a)(3)?

■ Section 362(a)(3) prohibits "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." Although Kemba froze the debtor's funds, post-petition, Kemba did not deem it necessary to have the court determine the status of the alleged lien on the debtor's account either prior to, or after, executing

menced.

the freeze. The application of an administrative freeze represents a creditor's independent determination that the creditor's claim is a valid lien which creates an interest in the account of the debtor, in favor of the credit union, superior to any other entity. The credit union's actions represent exactly the type of activity that the Code, particularly the automatic stay, seeks to prohibit. *See generally, Small Business Administration v. Rinehart,* 887 F.2d 165, 168 (8th Cir.1989).

The assertion that a creditor, with a potential secured claim as a result of an alleged right to setoff, can, post-petition, freeze a debtor's account without the Bankruptcy Court's approval is inconsistent with the purposes and provisions of the Bankruptcy Code. The Bankruptcy Code interfaces with a wide variety of commercial and legal relationships. Invariably, this results in at least delay in the exercise of otherwise available nonbankruptcy remedies and rights and, in some instances, the impairment or loss of otherwise available non-bankruptcy remedies and rights. These results, while understandably unsatisfactory to individual creditors, comprise a portion of the overall Congressional allocation of economic risks in connection with bankruptcy legislation. Congress placed the court at the vortex of bankruptcy proceedings and the provisions of the automatic stay are designed as the initial channels that regulate the flow of economic consequences, which, if left unchecked or diverted by extra judicial determinations, would drown a debtor's opportunity for a fresh start and destroy a creditor's opportunity to receive its hierarchically ordered claim to a pro rata share of the bankruptcy estate.

In discussing the administrative freeze, the court in *Wildcat Const.,* 57 B.R. at 981 noted:

> A further difficulty with a reading of Section 542(b) that transforms an exception to the requirement to turn property of the estate over to the trustee into an independent justification for not permitting the debtor in possession to draw on its bank accounts is that the setoff to

which the accounts may be subject has yet to be established.

Indeed, perhaps the most fundamental problem with countenancing the freezing of the debtor's bank accounts before any judicial determination of the rights of the parties has been made is that it begs the critical question, assuming in advance the precondition for its validity. This position converts a bank's potential right to setoff into an allowed claim at the outset.

. . . . .

> The freeze is essentially an extra-judicial temporary restraining order.

Similarly, in *New York City Shoes,* 78 B.R. at 431, the court noted that "[a]llowing a bank to effect a setoff without any prior judicial determination of the legitimacy of its claims raises, in any event, questions about fundamental fairness and due process of law."

A creditor cannot assert some interest in the debtor's funds on deposit and resort to self-help to preserve that claimed interest. Rather, the required course of action, mandated by the Code, is for the creditor to initiate a filing to obtain relief from the automatic stay, which specifically prohibits any action "to obtain possession of ... or exercise control over property of the estate." § 362(a)(3). The bank by placing an administrative freeze on the debtor's account, without obtaining a court order, impermissibly encroaches upon the authority assigned by Congress to the Bankruptcy Court.

Freezing a debtor's account can create significant economic havoc for a debtor who is attempting to reorganize in order to obtain the relief contemplated by Chapters 11 or 12 and can have an even more immediate and disastrous result upon an individual debtor's efforts to obtain the relief contemplated by Chapter 13. The Court in *Cusanno,* 29 B.R. at 813 noted the following:

> Here, however, in a Chapter 13 case involving individual debtors of modest means who may require the bank account funds to meet daily expenses for food, clothing and shelter, the bank's ac-

604

tions in disregard of court authority are especially troublesome. Furthermore, Fidelity [the bank] possessed a number of means by which it could have sought relief through the Bankruptcy Court without the account funds being dissipated during the pendency of court action.

. . . . .

Fidelity could have quickly sought such ex parte relief from the stay if it had believed that freezing the account was necessary to prevent the dissipation of funds that were eligible for setoff or as cash collateral unavailable to the debtor. Instead, the bank acted as though the automatic stay was not applicable to it.

The holding of *Baker, supra,* that Ohio law demands an actual debit be made with an accompanying bookkeeping entry to effectuate a setoff, could arguably lead a financial institution to the erroneous conclusion that it could impose a protracted administrative hold on a debtor's account without fear that such action would be in violation of 362(a)(3), if not (a)(7). As one commentator noted: "A bank is in the position of controlling the debtor's funds and by mere administrative "neglect" is able to circumvent the automatic stay provisions of Section 362(a)(3) and 362(a)(7). It seems inconceivable that Congress intended that result." Wynn, *Freeze and Recoupment: Methods for Circumventing the Automatic Stay?* 5 Bank.Dev.J. 85, 100 (1987).

Although the court acknowledges the opportunity that § 542(b) extends to creditors with debts subject to setoff, the court determines that Kemba's act to obtain possession of or exercise control over property of the estate, whether denominated a freeze, a hold or some other term, represents a self determined expansion of a permissible opportunity into a completed seizure prior to obtaining an order from the Bankruptcy Court terminating, annulling, modifying or conditioning the provisions of the automatic stay. The court concludes that Kemba's act of freezing the debtor's account is a violation of § 362(a)(3).

5. If the freeze is a violation of § 362(a)(3) what action could Kemba take to preserve such funds?

One argument often advanced by financial institutions in support of the administrative freeze is that the funds on deposit constitute cash collateral pursuant to 363(a) and, unless the financial institution consents, 363(c) prohibits the trustee or the debtor from using cash collateral without first obtaining court authorization. Thus the funds are in fact frozen by operation of the Code and the financial institution, by preventing access to the funds, is acting in accordance with the Code. *Williams,* 61 B.R. at 571; *Lee,* 40 B.R. at 125. *See also,* Williams, *Application of the Cash Collateral Paradigm to the Preservation of the Right to Setoff in Bankruptcy,* 7 Bank.Dev.J. 27 (1990) where the author argues that treating the funds as cash collateral "accords substantial respect to state-created rights while accommodating conflicting Code provisions." While such an argument could be persuasive in a Chapter 11 proceeding, this argument, as the author concedes, is not equally applicable to the vast majority of Chapter 13 cases, which are consumer, not business, filings. (11 U.S.C. § 1304(b)).

Some courts and commentators have concluded that financial institutions, with which the debtor simultaneously has an outstanding loan and also funds on deposit, are caught in a dilemma regarding the proper course of action to be taken with regard to the funds on deposit. *In re Williams,* 61 B.R. at 572; *In re Hoffman,* 51 B.R. at 46; Thorne, *Administrative Freezing of a Debtor's Bank Account: Violation of Stay?* 3 Bank.Dev.J. 181, 187 (1986); Weintraub and Resnick, *Freezing the Debtor's Account: A Banker's Dilemma Under the Bankruptcy Code,* 100 Banking L.J. 316 (1983); Groschadl, *"Freezing" the Debtor's Bank Account: A Violation of the Automatic Stay?* 57 Am. Bankr.L.J. 75 (1983).

Accordingly, courts have issued decisions containing guidelines intended to clarify options available to the parties. (In *Williams,* 61 B.R. at 575 n. 8, the court directed debtors to close all existing accounts upon filing and to open debtor-in-possession accounts at a different bank.

In *Crispell*, 73 B.R. at 375, after the Court determined that the freeze was not a set-off, it also acknowledged that an extended freeze would have the same effect as a setoff. The court in *Crispell* permitted the bank to freeze the account, but required it to file for relief from the stay or turn the funds over to the trustee within seven (7) days or the freeze would be deemed a willful violation of the stay.)

This court recognizes the practical problems inherent in the issues present; however, it is not persuaded that the Code sections under discussion place a financial institution in a situation from which it cannot escape without resort to self-help. The court recognizes that while the automatic stay may adversely impact on the substantive rights of creditors, the purpose of the automatic stay is not substantive, but procedural. The automatic stay is not the appropriate vehicle for the resolution of the conflicts in a specific debtor-creditor relationship; to the contrary, it is intended as a form of procedural protection, under which the debtor in a reorganization case can prepare and present a proposed plan free from unauthorized creditor pressure.

This court has observed three frequently reappearing fact patterns in which financial institutions place an administrative freeze on a Chapter 13 debtor's funds: (1) when a turnover demand is made, either by the trustee or the debtor, simultaneous with the filing of a bankruptcy petition, or so soon thereafter that the financial institution has not received notice of the filing from the Bankruptcy Court; (2) when the Chapter 13 filing comes to the attention of the financial institution as a result of receiving the Bankruptcy Court's notice and the financial institution wishes to take immediate action in connection with the debtor's funds; or (3) when the financial institution has a standing policy of freezing all accounts of a debtor upon receiving any notice of a bankruptcy filing. In these or similar situations, this court determines that, if the financial institution wishes to place an administrative freeze or a hold on a Chapter 13 debtor's funds on deposit, simultaneous with any such proposed exercise of control over the debtor's funds, the Code requires the financial institution to seek a judicial determination of the relative rights of the parties with respect to the funds and an immediate order from the Bankruptcy Court modifying or conditioning the stay to permit the financial institution to freeze or hold the funds pending the court's resolution of the issues presented.

This court has no desire to add additional proceedings to its existing docket, nor to increase the litigation expenses of parties in Chapter 13 cases; however, in the absence of the parties' agreed resolution of these issues, § 362(a)(3)'s stay automatically prevents any financial institution from any act to obtain possession or exercise control over the debtor's property, unless the financial institution has obtained an order from the Bankruptcy Court terminating, annulling, modifying or conditioning the stay.

In this particular proceeding, which is before the court in connection with cross-motions for summary judgment (Doc. 15 and Doc. 16), as a result of the stipulations, exhibits, memoranda and oral argument, the court is able to enter partial summary judgment with respect to the alleged violation of the stay and the alleged secured status of Kemba's claim. *See Matter of Sams* at 491–492.

As previously noted, the court determines that Kemba's action in freezing the debtor's account is a violation of the automatic stay. § 362(a)(3). The court further determines that Kemba's claim against the debtor is a secured claim to the extent of four hundred forty-two dollars and ninety-nine cents ($442.99) as of July 7, 1988 (§ 506(a), § 553(a)).

The questions of the allowance of the setoff, the determination of any damages for violation of the stay, and other related issues must await further hearings and the receipt of evidence and argument not yet presented.

Accordingly, the court has simultaneously issued an order setting a pretrial conference to consider any remaining issues involving Kemba and the debtor in this proceeding and the related estate case.

An Order in accordance with this decision is simultaneously entered.

SO ORDERED.