**In re Gloria L. COOKS, Debtor.**

**Bankruptcy No. 3–92–03792.**

United States Bankruptcy Court, S.D. Ohio, W.D.

July 19, 1993.

Charles A. Johnson and Beverly F. Schmaltz, Dayton, OH, for debtor.

Stephen D. Miles, Dayton, OH, for Monarch Marking F.C.U.

DECISION AND ORDER ALLOWING CLAIM OF MONARCH MARKING FEDERAL CREDIT UNION AS SECURED IN PART AND AS UNSECURED IN PART

WILLIAM A. CLARK, Bankruptcy Judge.

This matter is before the court upon the "Debtor's Objection to Allowance of Claim of Monarch Marking F.C.U." (Doc. # 18).

The court has jurisdiction by virtue of 28 U.S.C. § 1334 and the standing order of reference in this district. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(B)—allowance or disallowance of claims against the estate.

*FACTS*

1) On October 17, 1988, Gloria L. Cooks ("debtor") signed a revolving credit agreement with Monarch Marking Federal Credit Union.

2) The agreement contained the following provision:

(B) The undersigned hereby pledge all shares and/or deposits and payments and earnings thereon which they now or hereafter may have, whether held individually, jointly, or in trust, as security for any and all moneys advanced under this plan and interest accrued thereon and authorize the credit union, in the case of default, to apply same to payment of said obligation. However, this pledge does not include amounts held under an "Individual Retirement Account," "Keogh plan."

3) Debtor maintained both a "regular share account" and a "Christmas savings share account" with Monarch.

4) Pursuant to Monarch's proof of claim, on the date the debtor filed her petition in bankruptcy, the debtor owed Monarch $1,686.17 with respect to the revolving credit agreement. Monarch's proof of claim alleges a security interest in the two accounts the debtor maintained with Monarch.

5) On the date the debtor's petition in bankruptcy was filed, her regular share account with Monarch had a balance of $341.25 and her Christmas savings share account had a balance of $424.10.

6) This court entered an order on October 29, 1992, modifying the automatic stay of 11 U.S.C. § 362(a) which enabled Monarch to place an administrative freeze on the debtor's two accounts.

7) On October 22, 1992, the debtor filed an objection to Monarch's proof of claim on

the ground that Monarch had failed to perfect a security interest in the debtor's two accounts.

## CONCLUSIONS OF LAW

Monarch asserts that it has a security interest in the debtor's two share accounts by virtue of 1) a contractual pledge, 2) 12 U.S.C. § 1757(11), which describes the powers of federal credit unions with respect to liens on members' shares, and 3) 11 U.S.C. § 553, which governs setoff under the Bankruptcy Code. Because the court finds that Monarch has a right to setoff, it is unnecessary to make a determination of Monarch's rights under pledge law or 12 U.S.C. § 1757(11).[1]

Section 553 of the Bankruptcy Code provides that:

(a) Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case....

■ Section 553 of the Bankruptcy Code does not create setoff rights, but it does preserve in bankruptcy the equitable right of setoff available under state or non-bankruptcy federal law. *In re Gerth*, 136 B.R. 241, 243 (Bankr.D.S.D.1991); *GEC Industries, Inc. v. Colonial Rubber Works, Inc.*

*(Matter of GEC Industries, Inc.)*, 128 B.R. 892, 899 (Bankr.D.Del.1991).

■ At the hearing, the debtor did not contest Monarch's entitlement to a setoff,[2] but asserted that Monarch has not taken the steps necessary to effectuate a setoff under a decision of the Sixth Circuit Court of Appeals:

[T]he act of setoff is not complete until three steps have been taken: (1) the decision to exercise the right, (2) some action which accomplishes the setoff and (3) some record which evidences that the right of setoff has been exercised. *Baker v. Nat'l City Bank of Cleveland*, 511 F.2d 1016, 1018 (6th Cir.1975).

The debtor's theory, that Monarch does not have a lien because it has not performed these three steps, ignores the effect of the debtor having filed a petition in bankruptcy. Although § 553 preserves the right to setoff in bankruptcy, upon the filing of a debtor's petition in bankruptcy a creditor is prevented from exercising that right by the imposition of the automatic stay:

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title ... operates as a stay, applicable to all entities, of—

. . . .

(7) the setoff of any debt owing to the debtor that arose before the com-

---

1. As dicta, the court notes that it is doubtful that a valid common law pledge was created by the parties:

    The ability of the debtor-pledgor to withdraw funds at her convenience and to dissipate pledged property is inconsistent with the requirement that the credit union-pledgee exercise exclusive control over the pledged property. The history of the parties in connection with this account demonstrates that, under Ohio law, an effective common law pledge has not been established. *Homan v. Kemba Cincinnati Credit Union (In re Homan)*, 116 B.R. 595, 600 (Bankr.S.D.Ohio 1990).

    Equally dubious is Monarch's assertion of a security interest under 12 U.S.C. § 1757(11) which provides that a Federal credit union has the power "to impress and enforce a lien upon the shares and dividends of any member, to the

extent of any loan made to him and any dues or charges payable by him." The evidence at the trial in this matter demonstrated that Monarch took no affirmative action to impress such a lien.

2. Under Ohio law, a setoff "is that right which exists between two parties, each of whom under an independent contract owes a definite amount to the other, to setoff their respective debts by way of mutual deduction." *Witham v. South Side Building & Loan Ass'n of Lima, Ohio*, 133 Ohio St. 560, 561, 15 N.E.2d 149, 150 (1938). The right to setoff "is grounded on the absurdity of making A pay B when B owes A." *Studley v. Boylston Nat'l Bank*, 229 U.S. 523, 528, 33 S.Ct. 806, 808, 57 L.Ed. 1313 (1913).

388

mencement of the case under this title against any claim against the debtor. 11 U.S.C. § 362(a)(7).

Therefore, even though a creditor has a right to setoff, it is prevented from enforcing such right until the bankruptcy court grants permission to do so. The announced practice of the bankruptcy court in Dayton is to require a creditor to file a motion for relief from the automatic stay if the creditor wishes to place a temporary "administrative freeze" upon a debtor's funds deposited with the creditor until the court determines the creditor's rights in such funds. *Figgers v. Dayton Power & Light Employees Federal Credit Union (In re Figgers)*, 121 B.R. 772 (Bankr. S.D.Ohio 1990); *Homan v. Kemba Cincinnati Credit Union (In re Homan)*, 116 B.R. 595 (Bankr.S.D.Ohio 1990):

> [T]his court determines that, if the financial institution wishes to place an administrative freeze or a hold on a chapter 13 debtor's funds on deposit, simultaneous with any such proposed exercise of control over the debtor's funds, the Code requires the financial institution to seek a judicial determination of the relative rights of the parties with respect to the funds and an immediate order from the Bankruptcy Court modifying or conditioning the stay to permit the financial institution to freeze or hold the funds pending the court's resolution of the issues presented. *In re Homan*, 116 B.R. at 605.

Monarch correctly followed this court's procedure and the issue of whether Monarch has a secured claim is now before the court. Section 506(a) ("Determination of Secured Status") of the Bankruptcy Code provides that:

> (a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is *subject to setoff* under section 553 of this title, is

a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount *subject to setoff,* as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. (emphasis supplied)

█ As the Code explicitly states, it is the amount *subject to setoff* that is treated as secured; there is no requirement that the amount actually have been setoff by the creditor prior to a determination of secured status.[3]

In the instant case, the balances of the two accounts ($341.25 and $424.10) on the day the debtor filed her petition in bankruptcy are subject to setoff.[4] The remainder of Monarch's claim ($1,686.17 − 765.35 = $920.82) is treated as unsecured under § 506(a).

For the foregoing reasons, it is hereby ORDERED that the claim of Monarch Marking Federal Credit Union is ALLOWED as SECURED in the amount of $765.35 and ALLOWED as UNSECURED in the amount of $920.82. It is further ORDERED that any modification of the debtor's chapter 13 plan to accommodate Monarch's claim be submitted by the debtor by August 16, 1993.

---

3. Indeed, it would make little sense to refer to a previously executed setoff as a secured claim. The funds would have already been "transferred" and the secured portion of a creditor's claim would have been satisfied.

4. Any amounts deposited by the debtor in the two accounts after the debtor filed her petition in bankruptcy are *not subject to setoff,* 11 U.S.C. § 553(a), nor would they be subject to any lien that existed prior to the filing, 11 U.S.C. § 552(a).