In re **BRIAN JOHNSON MOTOR CO., INC., Debtor.**

**Bankruptcy No. 94–74770.**

United States Bankruptcy Court, D. South Carolina.

Jan. 27, 1995.

Janet E. Broome, Columbia, SC, for trustee.

Vickie R. Steele, Columbia, SC, for Palmetto Federal Sav. Bank of S.C.

## ORDER

JOHN E. WAITES, Bankruptcy Judge.

THIS MATTER comes before the Court on the motion of Palmetto Federal Savings Bank of South Carolina ("Bank") for relief from the automatic stay for cause to allow it to setoff $2,617.24 in funds on deposit in one of the Debtor's bank accounts with the Bank. The Chapter 7 Trustee ("Trustee") objected to the motion and argues that the Bank is not entitled to setoff, that setoff would be inequitable as to similarly situated creditors, and that the administrative freeze placed upon the account by the Bank violated the automatic stay and thus entitled the Trustee to actual damages, including attorneys fees and costs, and punitive damages pursuant to 11 U.S.C. § 362(h).[1] Based upon the evidence presented and the stipulations of the parties, the Court makes the following findings of fact and conclusions of law.

---

1. Further references to the Bankruptcy Code, 11 U.S.C. § 101, *et seq.*, shall be by section number only.

*Findings of Fact*

The Bank sold a repossessed automobile to Brian Johnson Motor Co., Inc. (Debtor), for $5,000 on September 13, 1994 and was paid by check from the Debtor which was later dishonored for insufficient funds. During this period, the Debtor maintained a checking account, number 8083003154, with the Bank. On October 4, 1994 at a time prior to 3:40 p.m., the Bank placed an administrative freeze on the account in order to later exercise its setoff rights pursuant to its account agreement with the Debtor. At that time, the account contained funds in excess of $5,000. On October 4, 1994 at 3:40 p.m., the debtor filed a voluntary Chapter 11 bankruptcy petition, became a Debtor in Possession, and continued to operate its business as a seller of used automobiles. Due to the insistence of the principals of the Debtor made to clerical staff of the Bank, on or about November 17, 1994 and November 21, 1994, two checks written by the Debtor, but dated prepetition, in the total sum of $2,400.78 were honored by the Bank and allowed to clear the account, reducing the balance from $5,017.82 to $2,617.24. On November 21, 1994, an administrative freeze was again placed on the account by the Bank, at a time in which the Bank knew of the Debtor's bankruptcy case, the conversion of the case to Chapter 7, and the appointment of the Trustee.

By order of this Court dated November 14, 1994, the Chapter 11 bankruptcy case was converted to a case under Chapter 7. On November 15, 1994, the Chapter 7 Trustee was appointed by the United States Trustee. By letter telefaxed to the Bank on November 16, 1994, the Trustee requested the Bank to close the account and pay $2,052.84 in funds to the Trustee (proposing to leave a balance of $2,964.98 to cover four outstanding checks). The Bank, by retaining the funds, refused to turn over the funds based upon its right of setoff. The Bank filed its Motion for Relief from Stay to allow it to setoff the account against its claim against the Debtor on December 21, 1994.

At the hearing in this matter on January 17, 1995, and after the introduction of evidence regarding the Bank's right to setoff, the Trustee stipulated that the Bank was entitled to setoff the balance of the account against its $5,000 claim. However, as a result of the violation of the automatic stay due to the postpetition administrative freeze placed on the account, the Trustee requested an award of actual damages in the amount of $2,617.24, attorneys fees and costs in the amount of $969.50 [2], and punitive damages in the amount of $2,617.24.

*Discussion and Conclusions of Law*

■ The Trustee's stipulation that the Bank is entitled to setoff in this instance is dispositive of the issue of the Bank's entitlement to the account funds in the amount of $2,617.24. In recognizing the Bank as a secured creditor to that extent under § 506(a), the Bank would be entitled to relief from the stay in this case unless it is provided adequate protection of its interests pursuant to § 361 [3] or other cause is shown. No such adequation protection was offered or provided at the hearing nor sufficient cause shown, therefore, the Bank has met its burden of proof and is entitled to relief from the stay pursuant to § 362(d).[4] The Trustee seeks to negate the effect of the relief from stay and ensuing setoff against the balance of funds in the subject account by asking the Court to award damages against the Bank

---

**2.** The attorney's fees and costs incurred in this case were presented by affidavit at the hearing and not contested by the Bank. The attorney's fees and costs appear reasonable and necessary.

**3.** There being no equity in the account above the Bank's setoff claim.

**4.** Based upon the findings of the Court regarding the violation of the stay and damages, it is unnecessary for this Court to presently consider whether there exists an equitable defense to relief from the stay or setoff against the full balance of account funds.

for the violation of the stay attributable to the administrative freeze of the account on November 21, 1994.

The Fourth Circuit Court of Appeals has recently concluded that an administrative hold or freeze placed on a debtor's bank account postpetition and before receiving an order for relief from the stay from the Bankruptcy Court is tantamount to the exercise of a right of setoff and violates the automatic stay provisions of § 362(a)(7). *In re Strumpf*, 37 F.3d 155 (4th Cir.1994). In that case, the Court sustained the Bankruptcy Court's finding of damages against a bank for the violation of the stay even though the bank was later found entitled to a setoff and granted relief from the stay.

Prior to *Strumpf*, this Court had held that an administrative freeze on a debtor's account for the purpose of obtaining relief from the stay to allow a setoff did not violate the stay. *In re Moser*, 93–70386 (Bankr.D.S.C. 4/27/93, JBD). *Strumpf* effectively overrules *Moser* on this proposition of law.

In the instant case, the Bank seeks to distinguish *Strumpf* because the Debtor in *Strumpf* was seeking to reorganize under Chapter 13 and not liquidate under Chapter 7 and further alleges that the Trustee or creditors of the Chapter 7 case were not damaged by the freeze since the Bank was at all times entitled to the funds as a secured creditor under § 506(a) and entitled to hold said funds instead of paying them over to the Trustee pursuant to § 542(b) and § 363(c).[5]

■ The Court in *Strumpf* appears to recognize the effects of § 506(a) and § 542(b) under which a creditor entitled to setoff is relieved of the requirement to turn over property to the extent it is subject to setoff.[6]

However, I believe the Bank is incorrect in its conclusion that, because 542(b) provides that a creditor who has a right of setoff does not have to turn over the funds immediately upon demand, that it must unmistakenly follow that the creditor can continue to hold the funds indefinitely through an administrative freeze until an order is entered by the Bankruptcy Court providing for the disposition of funds in question. To the contrary, the Court in *Strumpf* recognizes as the Bank's proper remedy, the right to seek immediate, even *ex parte*, relief from the stay as the means of immediately addressing the banker's dilemma; i.e., the ability of a bank to exercise a setoff before a debtor withdraws the funds or a trustee obtains them by turnover.

It appears to this Court that the *Strumpf* ruling is based upon the literal reading of applicable statutes, § 362(a)(7), § 553, and, also by reference, § 506 and § 542, all of which apply to Chapter 7 cases as well as cases under Chapter 13 and other Chapters. Merely because the *Strumpf* Court mentions the importance of the Chapter 13 Debtor's access to the funds in relation to his prospects for successful rehabilitation does not per se limit its literal reading of these statutes to Chapter 13 or other reorganization chapters. It should be noted that in its footnote reference to § 542(b), the *Strumpf* Court referred to the turnover of property to the *Debtor's estate* (as opposed to the trustee) (emphasis added). Clearly there is an estate of the debtor in a Chapter 7 case as well as in Chapters 13, 12 and 11 cases and the automatic stay protects the estate, as represented by the Trustee, not just the debtor in a Chapter 7 case. [See § 362(a)(2), (3) and (4) ].

The Bank asserts that § 542(b) allows it to retain funds even upon the receipt of a demand for turnover from a trustee and therefore such a right to retain possession has

---

5. Section 363(c) does not appear applicable in this case under Chapter 7 because the business of the debtor is not authorized to be operated pursuant to § 721.

6. In *Strumpf*, the Court stated in a footnote: "The Code also grants creditors with a valid right of setoff two other rights. Section 506(a) gives a creditor a secured claim to the extent of the amount subject to setoff. See 11 U.S.C. § 506(a). Section 542(b) excepts a creditor from turning over property to the Debtor's estate to the extent of the setoff. See 11 U.S.C. § 542(b)." p. 157.

essentially the same effect as an administrative freeze.

If this Court were to accept the Bank's argument, the Bank even without formally freezing the account in a Chapter 7 case (or any case in which a trustee seeks the funds), as distinguished from reorganization cases in which the Debtor may write checks on the account, may sit back and resist turnover for an indefinite period of time without being required to seek relief from the stay in order to establish and exercise its setoff rights. Such inaction by the Bank would force a diligent Chapter 7 Trustee, uncertain of the Bank's entitlement to setoff, to commence an adversary proceeding against the Bank pursuant to Bankruptcy Rule 7001 in order to determine the estate's interest, if any, in the funds on account by seeking a court order for a turnover. If the Bank's argument is accepted, while this case was in liquidation under Chapter 11, the Debtor in Possession could have asserted a violation of the stay for the holding of account funds after demand, but upon conversion, the Chapter 7 Trustee could not.

Based upon my reading of *Strumpf*, the Fourth Circuit Court of Appeals did not intend to draw such a distinction between a Chapter 13 case and a Chapter 7 case. A liquidation of estate assets may be the goal of plans under Chapters 13, 12 and 11 as well as Chapter 7. Cases under Chapters 13, 12 and 11 may likewise have a trustee (and a debtor in possession in Chapter 11) who seeks a turnover of bank funds pursuant to § 542.

■ This Court interprets the Fourth Circuit's literal reading of the statute in *Strumpf*,[7] to mean that when a creditor (such as the Bank) acts postpetition to deprive the debtor's estate of the possession of bank account funds without first obtaining an order providing for relief from the stay, it is a violation of the stay under § 362(a)(7) [and may also violate other sections of § 362(a) such as (a)(2), (3) and (4) ].

The Court of Appeals in *Strumpf*, and this Court in its opinion in *Moser*, recognized that a creditor has the obligation to timely, if not immediately, seek relief from the stay in order to establish and exercise its setoff rights, if any, upon its decision to hold or withhold account funds (which are property of the estate under all Chapters pursuant to § 541) from the possession of the bankruptcy estate. The creditor may not unilaterally assert a setoff right without first establishing its validity and receiving relief from the stay by order of the Bankruptcy Court. In a recent case similar to *Strumpf*, the Eleventh Circuit also found an administrative freeze violated the automatic stay by stating:

> The right of setoff is not absolute ... A freeze allows a bank to avoid or delay the Code-mandated determination of the validity of the setoff rights ... The Code sets forth the procedures for the Bankruptcy Court to determine the validity of the (setoff) right ... (by § 362 motion). Under this framework, freezing the account to protect a valid right of setoff only begs the question whether the right is truly valid.... The freeze is a unilateral, extrajudicial determination by the creditor that the setoff right is valid. Citing *In re Homan*, 116 B.R. 595, 603 (Bankr.S.D.Ohio 1990). By providing a procedure for judicial determination (an ex parte 362 motion), the Code eschews such creditor self help.

*In re Patterson*, 967 F.2d 505, 509, 510 (11th Cir.1992).

This reasoning may apply regardless if the Bank holds the funds by a formal administrative freeze or merely a hold in defense to a turnover request. If a creditor unreasonably acts to retain the bank account funds after a request for turnover by the Trustee or debtor, with or without an administrative freeze, it may likewise be tantamount to the setoff and therefore a violation of the stay. However, this Court is not called to decide that issue because in this case there was a postpe-

---

**7.** In *Strumpf*, the Court stated "Statutory construction begins with the literal language of the statute ... and if the language is clear and unambiguous our task is at an end unless a literal reading of the statute contravenes the clearly expressed legislative intent of Congress", citing

*Russello v. United States*, 464 U.S. 16, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983). Furthermore, "While the bankers dilemma may allow a debtor to defeat a creditors right of setoff, the clear and unambiguous language of § 362(a) produces this result." *Supra* at 159.

tition administrative freeze and therefore a violation of the stay.

Whether damages should be considered because of this violation of the stay depends to a large extent upon the nature and circumstances associated with the Bank's actions to assert, establish and exercise its setoff rights. The Bank in this case argues that since it is ultimately entitled to setoff the full balance of the account, the estate could not be damaged for it was never entitled to the funds. However, the Fourth Circuit in the *Strumpf* decision sustained a damage award against a creditor under circumstances in which the creditor ultimately received relief from the stay for setoff. Therefore, the general premise of this argument by the Bank must be overruled.

 Based upon the postpetition freeze of the account on November 21, 1994, I find that the Bank violated the stay according to *Strumpf.* Because the evidence is clear that the Bank knew of the bankruptcy case at the time of the freeze and intended to place the freeze, I find that the violation of the stay was willful.

In this case, the Bank placed an administrative freeze on the Debtor's account prepetition on October 4, 1994 and again placed a freeze on the account postpetition on November 21, 1994. These acts effectively deprived the Debtor's estate, both in Chapter 11 and Chapter 7, of the possession of the balance of the funds. The Bank did not file its Motion for Relief from Stay in order to assert its setoff rights until December 21, 1994. The Bank did not seek *ex parte* relief nor did it seek an expedited hearing as recommended in *Strumpf, Patterson* and *Moser.* No evidence was offered by the Bank which demonstrated that it provided sufficient information or records to the Trustee to suitably substantiate its right of setoff over this account and therefore avoid the question of the validity of its setoff altogether. As a result of the Bank's inaction, the estate incurred attorneys fees and costs in pursuing possession of the funds. Such fees and costs

will likely reduce the distribution available to creditors.

 It is the finding of this Court that the Bank's delay of 78 days before the filing of its Motion for Relief from Stay in order to establish and assert its setoff rights and the resulting 105 day delay before a hearing was held was unreasonable and was the proximate cause of damages incurred by the estate.[8] For that reason, I find that the estate has suffered damages in the nominal amount of $50.00 and $969.50 as attorneys fees and costs incurred by it.

 Considering (as one Court previously referred to this dilemma) the "Catch–22" nature of the circumstances for the Bank in this case, the precedent in this District of the *Moser* decision, and because the *Strumpf* decision was only recently rendered on October 13, 1994, it is the finding of this Court that it would be patently unfair to consider any award of punitive damages against the Bank in this matter. Therefore, it is

**ORDERED,** that the Bank's Motion for Relief from Stay is granted and the Section 362 stay is modified to permit the Bank to setoff its claim against the funds remaining in the Debtor's account with the Bank, conditioned upon the Bank's compliance with the remaining provisions of this Order. It is further

**ORDERED,** that the Bank is found to be in violation of the automatic stay due to the postpetition administrative freeze placed on the account and that further the estate, through the Trustee, is awarded actual damages against the Bank in the amounts of $50.00 as nominal damages and $969.50 as attorney's fees and costs incurred by the estate. The Bank is further Ordered to pay such damages within 10 days of the entry of this Order. The Trustee's request for punitive damages is denied.

**AND IT IS SO ORDERED.**

---

**8.** While the Court, in *Strumpf,* stated that the length of time a creditor intended to maintain a hold (on an account) was not relevant to whether the hold was tantamount to ·a setoff, it did not preclude this Court from considering the length of time and circumstances effecting the hold as a factor in determining damages.