In re Lorenzo P. MAUN, M.D., Debtor(s).

JOHN FABICK TRACTOR CO., Movant(s),

v.

Lorenzo P. MAUN, M.D., Respondent(s).

Bankruptcy No. BK 86–31029.

United States Bankruptcy Court, S.D. Illinois.

Jan. 20, 1989.

Ronald Pallmann, Fairview Hgts., Ill., for John Fabick Tractor Co.

Steven N. Mottaz, Alton, Ill., for debtor.

## ORDER

KENNETH J. MEYERS, Bankruptcy Judge.

This matter is before the Court on a Motion for Relief from Stay filed by John Fabick Tractor Company ("Fabick") against Lorenzo P. Maun, M.D. ("debtor"). Fabick seeks to have the stay lifted to enforce its lien interest against two tractors which secure a note given it by debtor. The relevant facts are as follows:

On May 10, 1985, debtor purchased two Caterpillar tractors, an excavator and a track loader, from Fabick. Debtor gave Fabick a promissory note for $177,408.00 which called for Fabick to receive 48 monthly payments of $3,696.00 each. The tractors served as security on the note. Debtor intended to use the tractors to construct a shrimp farm on Grand Cayman Island. The tractors arrived on Grand Cayman in June, 1985 and have remained there ever since. Except for some excavation at the site, the shrimp farm has never been completed.

On October 2, 1986, debtor filed a petition for relief pursuant to Chapter 11 of the Bankruptcy Code. Debtor's bankruptcy schedules indicate that as of the date of the petition he owed Fabick $125,664.00 on the note and that the value of the tractors was $50,000.00.

After the filing of the petition, debtor, acting in his capacity as debtor-in-possession, continued to make payments on the note to Fabick. Since filing the petition, debtor has made eleven payments of $3,696.00 each, for a total of $40,656.00.

Fabick filed a proof of claim for $95,-650.00 on August 21, 1987. At that time, Fabick stated that the tractors were worth $50,000.00. The parties later stipulated that the tractors are presently worth $55,-000.00. They also stipulated that Fabick has a perfected security interest in the two tractors and that the tractors are not necessary for debtor's reorganization.

Fabick now claims that debtor owes it $85,008.00, a figure it apparently arrived at by deducting debtor's post-petition payments of $40,656.00 from the $125,664.00 debtor listed on his schedules as being owed to Fabick. As a result, argues Fabick, debtor lacks equity in the tractors because the debt they secure exceeds their value.

In response, debtor claims that it has equity in the tractors because Fabick improperly applied the post-petition payments towards the whole debt instead of only towards the secured portion. He argues that since Fabick is undersecured the post-petition payments should only have been applied to the secured portion of the debt. Fabick would then be oversecured as to the secured portion of its claim because subtracting the post-petition payments of $40,-656.00 from the $55,000.00 value of the security results in a secured claim of $14,-344.00.

In support of their positions on the question of the application of the post-petition payments, both parties have cited *United Savings Association of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988). *Timbers* involved an undersecured creditor whose collateral was appreciating in value and who was receiving post-petition rents under an after-acquired property clause in its security agreement. The creditor contended that it was also entitled to adequate protection pursuant to 11 U.S.C. § 362(d)(1) for the use of proceeds it was deprived of by virtue of the delay in the foreclosure on its collateral occasioned by the automatic stay, *i.e.*, lost opportunity costs. The Supreme Court flatly rejected creditor's argument, holding that an undersecured creditor is not entitled to compensation under 11 U.S.C. § 362(d)(1) for lost opportunity costs. The Court noted that adequate protection would still be available to the undersecured creditor whose collateral was declining in value while the stay was in effect. *Id.* 108 S.Ct. at 629–30.

The facts in the present case are somewhat different than those in *Timbers*

in that here the debtor voluntarily made payments to the creditor after the filing of the petition without an order of adequate protection being requested from or issued by the Bankruptcy Court. The payments to Fabick were in the normal course of business and therefore were allowed under 11 U.S.C. § 1108.[1] These payments were, in effect, a form of adequate protection because the parties apparently agreed that debtor would be able to continue to retain the tractors so long as he continued to make his scheduled payments to Fabick.[2]

The few cases discussing the application of adequate protection payments to undersecured claims support the position that, to the extent that such payments exceed the decrease in value of the collateral, they should be applied to reduce the secured portion of the claim. See, *Matter of Kain*, 86 B.R. 506 (Bankr.W.D.Mich.1988); *In re Canaveral Seafoods, Inc.*, 79 B.R. 57 (Bankr.M.D.Fla.1987).

In *Canaveral Seafoods*, the undersecured creditor was paid from debtor's post-petition income which, if not utilized to pay that creditor, would have been available for the benefit of other creditors. The court applied the payments to the secured portion of the claim.[3] 79 B.R. at 59.

In *Kain*, the money to pay the undersecured creditor came from the sale of the creditor's collateral. The court held that

[w]hen an *undersecured* creditor receives proceeds from the sale of its collateral during the pendency of a case, whether or not denominated as adequate protection payments, the net effect is

that such payments shall be credited to reduce its total principal indebtedness. Therefore, the undersecured portion of the creditor's claim will be reduced by the total amount of the proceeds received and the secured portion of the creditor's claim will be determined *exclusive* of such payments.

86 B.R. at 515 (emphasis in original).[4] The court distinguished *Canaveral Seafoods* by noting that the payments in that case were from debtor's post-petition income while in *Kain* the payments came from the proceeds of the sale of the undersecured creditor's collateral. *Id.*

■ In the present case, Fabick's collateral has not been sold and the money for the post-petition payments came from debtor's post-petition income. Unless these payments can be characterized as adequate protection for a decrease in the value of the collateral, they must be applied towards the secured portion of Fabick's claim.

There is no indication from the evidence submitted by the parties that the tractors have decreased in value since the filing of the petition. On his bankruptcy schedules debtor listed the value of the tractors as $50,000.00. Almost a year later, the same value was placed on the tractors in Fabick's proof of claim. At the hearing the parties stipulated that the tractors were worth $55,000.00. It must therefore be concluded that the payments were not intended as adequate protection for a decrease in value of the collateral. Accordingly, the Court finds that debtor's $40,-

1. This section empowers the trustee to operate a debtor's business. The debtor-in-possession in a Chapter 11 case essentially has all the rights, powers and duties of a trustee. 11 U.S.C. § 1107(a). Thus, the debtor had the right to continue making payments to secured creditors such as Fabick. *Matter of Ford,* 61 B.R. 913, 918 (Bankr.W.D.Wisc.1986).

2. Fabick filed its Motion for Relief from Stay nearly 23 months after the petition was filed. As Fabick itself noted, "Debtor's payments to Fabick purchased the cooperation of Fabick for an extended period of time." *Petitioner's Reply to Debtor's Memorandum,* p. 4. Exactly what caused Fabick to become dissatisfied with this arrangement with debtor has not been revealed to this Court.

3. 5% of each payment in *Canaveral Seafoods* was ordered applied towards various taxes arising in connection with the payments. In the present case, the parties have not indicated whether a portion of those payments should be applied towards taxes so the Court will assume that this is not necessary.

4. This method of applying the proceeds of the sale of the collateral would also have the effect of reducing the secured portion of the claim since, as the *Kain* court noted, the secured portion of the claim is determined by the value of the remaining collateral as of the effective date of the plan. *Id.* at 515 n. 28.

656.00 in post-petition payments must be applied towards the secured portion of Fabick's proof of claim. As a result, Fabick's secured claim is reduced from $55,000.00 (the value of its collateral) to $14,344.00. Fabick has failed to meet its burden of proof that debtor lacks equity in the collateral. *See,* 11 U.S.C. § 362(g)(1).

IT IS THEREFORE ORDERED that the Motion for Relief from Stay filed by the John Fabick Tractor Company is DENIED.