**HABINGER, INC., Appellant,**

v.

**METROPOLITAN COSMETIC AND RECONSTRUCTIVE SURGICAL CLINIC, P.A., Appellee.**

**Civ. No. 4–90–214.**
**Bankruptcy No. 3–86–3007.**
**Adv. No. 3–88–126.**

United States District Court,
D. Minnesota,
Fourth Division.

July 24, 1990.

possession. The Court will remand the motion for a determination of whether the payments were made in the ordinary course of business.

## FACTS

The debtor in this case is the Metropolitan Cosmetic and Reconstructive Surgical Clinic, Inc. (MCRS), a plastic surgery clinic owned and operated by Dr. Allen W. Moberg. Prior to the filing of its bankruptcy petition, MCRS had entered into several sale and lease-back arrangements with Habinger to obtain medical equipment and office furnishings. Although styled as leases, the transactions were, in fact, secured sales. Appellee contends that Habinger is not fully secured. Habinger has not refuted this contention.

MCRS filed bankruptcy under Chapter 11 on November 6, 1986. Moberg operated the clinic as a debtor-in-possession until September 14, 1988 when a trustee was appointed. The case was converted to a Chapter 7 proceeding on January 11, 1989.

At the time the Chapter 11 petition was filed, MCRS owed Habinger $177,000. During the time Moberg operated as debtor-in-possession, $53,875 was paid to Habinger and allocated to six equipment financing "leases." Neither MCRS nor Habinger sought court approval for these payments.

The trustee's motion to avoid the post petition payments to Habinger was granted by the bankruptcy court. Habinger now appeals that decision.

## DISCUSSION

█ Post petition transfers are governed by section 549 of the Bankruptcy Code. Section 549(a)(2)(B) provides that transfers not authorized by either the Code or court order may be avoided by the trustee. Habinger argues that the transfers at issue may not be avoided because sections 363(c)(1), 1108 and 1107 of the Code authorize payments by a debtor-in-possession to a secured creditor.

█ With certain limitations not relevant here, section 1107 gives a debtor-in-possession all the rights, functions and duties possessed by a trustee. Section 1108 al-

David Jon Hoiland, Minneapolis, Minn., for appellant.

Thomas J. Lallier, Mackall, Crounse & Moore, Minneapolis, Minn., for appellee.

## MEMORANDUM AND ORDER

MacLAUGHLIN, District Judge.

This matter is before the Court on the appeal of Habinger, Inc. (Habinger) from the February 13, 1990 order of the United States Bankruptcy Court granting the trustee's motion to avoid post petition payments made to Habinger by the debtor-in-

lows the trustee to operate the debtor's business. When the debtor's business is being operated by a debtor-in-possession under the authority of sections 1107 and 1108, section 363(c)(1) gives the debtor-in-possession authority to

enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and ... use property of the estate in the ordinary course of business without notice or a hearing.

11 U.S.C. § 363(C)(1). The question before the bankruptcy court was whether or not the Moberg's payments to Habinger constituted a transaction in the ordinary course of the debtor's business. The bankruptcy court stated:

The term "ordinary course" is not defined [in the statute], but presumably it means something less than what otherwise might be ordinary course for a nondebtor. A good case can be made for the proposition that ordinary course includes only those payments of ordinary day-to-day operating expenses that, while necessary, are relatively insignificant; and, for which the requirement of prior Court approval on notice and hearing, would unduly burden the Court and the debtor.

February 13, 1990 Order at 5–6. The bankruptcy court found that the payments to Habinger were not "relatively insignificant" and that court approval of those payments would not have been "unnecessarily burdensome." *Id.* at 7. The bankruptcy court clearly believed that MCRS's other creditor's were entitled to notice of these payments and an opportunity to determine whether those payments were prejudicial to their interests. *Id.* On that basis, the bankruptcy court held that the payments were not in the ordinary course of business and granted the trustee's motion to avoid them.

■ The bankruptcy court's definition of the ordinary course of business is not consistent with the case law that has developed under section 363(c). The courts have defined the "ordinary course of business" through two complementary tests reflecting that concept's "vertical" and "horizon-

tal" dimensions. The vertical test, sometimes referred to as the creditor's expectation test, views the transaction "from the vantage point of a hypothetical creditor and inquires whether the transaction subjects a creditor to economic risks of a nature different from those he accepted when he decided to extend credit." *In re Johns–Manville Corp.*, 60 B.R. 612, 616 (Bankr.S.D.N.Y.1986). Application of this test involves a comparison of the debtor-in-possession's prepetition business activities with its post petition transactions. *In re Dant & Russell, Inc.*, 853 F.2d 700, 705 (9th Cir.1988); *In re Hanson Industries, Inc.*, 90 B.R. 405, 414 (Bankr.D.Minn.1988). The horizontal, or industry-wide test, compares the transaction against the typical transactions of like businesses. "[T]he test is whether the post petition transaction is of a type that other similar businesses would engage in as ordinary business." *Dant & Russell*, 853 F.2d at 704.

These tests provide useful guidance to the courts, but they are not to be applied rigidly. If either test or dimension is not satisfied, then the disputed transaction is "most likely" not in the ordinary course of business. *In re Media Central, Inc.*, 115 B.R. 119 (E.D.Tenn.1990). Section 363 is designed to serve the "overriding goal of maximizing the value of the estate" by striking the optimal balance between the interests of the debtor and the creditors. *United States ex rel. Harrison v. Estate of Deutscher*, 115 B.R. 592 (M.D.Tenn.1990). The "ordinary course of business" standard is intended to allow a debtor "the flexibility it needs to run its business and respond quickly to changes in the business climate." *Id.* At the same time, it protects creditors from dissipation of the estate's assets. *Id., citing* H.R.Rep. No. 595, 95th Cong. 1st Sess. 181–82 (1977), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 6141–43.

■ Post petition payments on prepetition secured debt can constitute transactions in the ordinary course of business. *In re Maun*, 95 B.R. 94, 96 (Bankr.S.D.Ill. 1989); *In re Ford*, 61 B.R. 913, 918 (Bankr. W.D.Wisc.1986). Of course, a key question

in determining whether to avoid payments purportedly made in the ordinary course of business is whether the payments undermine other creditor's interests. *See, e.g., In re Flagler–at–First Associates, Ltd.,* 114 B.R. 297, 299 (Bankr.S.D.Fla.1990) (generally to extent post petition payments exceed the decrease in the value of creditor's collateral they must be applied to reduce the secured portion of claim); *Maun,* 95 B.R. at 96 (Bankr.S.D.Ill.1989) (post petition payments. made to undersecured creditor must be applied to secured portion of creditor's claim).

The record in this case does not permit a determination of whether the debtor's payments to Habinger were in the ordinary course of business. Payments for furniture and equipment purchased on credit and necessary for the operation of the business certainly might be in the ordinary course of business. Determining whether the particular payments at issue were in the ordinary course of business, however, depends on: (1) whether the amounts paid to Habinger were consistent with "the creditor's expectation" and "the industry-wide" tests; (2) how much of Habinger's debt was secured and whether the payments to Habinger were applied to the secured portion of the debt; and (3) whether the payments to Habinger actually prejudiced the interests of other creditors. The answer to these questions cannot be determined from the existing record. There may also be other relevant considerations.

Because it is impossible to determine on the record as it stands before this Court whether the payments made to Habinger were in the ordinary course of business, the Court will remand to the bankruptcy court for a redetermination of the trustee's motion.

Accordingly, based on the foregoing, and upon all the files, records and proceedings in this case,

IT IS ORDERED that the trustee's motion to avoid the post petition payments to Habinger is remanded to the bankruptcy court for further determination consistent with this order.