**In re QUALITY INTERIORS, INC., Debtor and Debtor-in-Possession.**

**Bankruptcy No. 90–41743.**

United States Bankruptcy Court, N.D. Ohio.

Feb. 8, 1991.

Joseph C. Lucci, Youngstown, Ohio, for debtor and debtor-in-possession Quality Interiors, Inc.

Richard G. Zellers, Youngstown, Ohio, for Western Reserve Bank.

## MEMORANDUM OPINION

WILLIAM T. BODOH, Bankruptcy Judge.

The matter before the Court is the Motion of the Debtor-in-Possession ("DIP") for an order releasing an administrative hold or in the alternative to use cash collateral and this Court's November 5, 1990 Order granting a replacement lien subject to further consideration. For the reasons stated below, the Motion will be taken as a motion to use cash collateral, and it is sustained in part, subject to a final hearing on the use of cash collateral if necessary.

The issues presented in this case are relatively simple; however, the resolution of these issues, like so many others faced by this Court, is complicated by competing policies of the Bankruptcy Code. The first issue in this case is whether an administrative "freeze" placed on the DIP's accounts by a bank constitutes a violation of the automatic stay of 11 U.S.C. § 362. The second issue is to what extent the bank has a right of setoff in funds on deposit with it and to what extent these funds constitute "cash collateral" under the Bankruptcy Code.

The DIP, Quality Interiors, Inc., is a producer and installer of drywall and plaster which filed its Petition for Relief under 11 U.S.C. Chapter 11 on October 25, 1990. At that time, the DIP maintained two deposit accounts at Western Reserve Bank, a general operating account and a payroll account. The DIP also was the obligor on five outstanding note obligations owed to Western Reserve; the balance due on each of these obligations exceeds the aggregate amount of the two deposit accounts at the time of filing.

On October 26, 1990, the DIP, as it did each week, transferred funds from its general account to its payroll account in order to pay its payroll. The DIP did so on this date by drawing a check on its general account payable to "Quality Interiors, Inc. (Payroll Account)" in the amount of Seven Thousand Six Hundred Dollars ($7,600.00). The DIP then paid its payroll by issuing various checks from the payroll account in an aggregate amount slightly less than this figure. The payroll checks and one check drawn on the general account were subsequently returned to the DIP with notices of insufficient funds, even though the account balances exceeded the amount of the checks, due to the fact that Western Reserve had placed an administrative "hold" on both accounts. The date the administrative hold was imposed appears to be October 26, 1990; however, in its brief filed with this Court, Western Reserve contradictorily refers to both October 25 and October 26 as the date on which the administrative hold was placed on the DIP's accounts. Western Reserve does not specifically assert that the hold occurred pre-petition. In order to make this claim, the Bank would have to demonstrate that the hold was in effect prior to 10:21 a.m. on October 25, 1990, the time of the filing of the Petition. Furthermore, the allegation that the hold occurred pre-petition is inconsistent with the fact that the check effecting the transfer between the two accounts was honored by the bank on October 26, 1990.

After filing the Petition, the DIP filed its Motion for an order to release administrative hold or in the alternative to use cash collateral. Subsequently, the parties agreed that Western Reserve would release the hold on the two accounts in exchange for a replacement lien in the aggregate amount of the account balances, ap-

proximately Ten Thousand Dollars ($10,-000.00). The parties agreed to review the granting of the replacement lien after briefs were submitted and this Court reached its findings with respect to the propriety of the administrative hold. The parties' agreement is reflected in this Court's November 5, 1990 Order. In its brief, the DIP asserts that the Bank had no right of setoff because the debts owing to the Bank had not yet matured and, with respect to the payroll account, that no right of setoff exists against special deposits. The DIP also asserts that the administrative hold violated the automatic stay of 11 U.S.C. § 362. Western Reserve simply asserts that the DIP's note obligations were in default, and thus the Bank had a contractual right to setoff the funds on deposit through the use of the administrative hold.

■ The first issue before the Court is whether the administrative hold violates the automatic stay imposed by 11 U.S.C. § 362. While this question is the subject of considerable debate, as discussed below, it should be noted first that the *setoff* of any debt *does* violate the automatic stay. 11 U.S.C. § 362(a)(7). The Court of Appeals in this Circuit has determined that the following three steps are necessary for a setoff to occur:

1. the decision to exercise the right of setoff,
2. some action which accomplishes the setoff, and
3. a record which evidences that the right of setoff has been exercised.

*Baker v. Nat'l City Bank of Cleveland,* 511 F.2d 1016, 1018 (6th Cir.1975). Therefore, in this Circuit an administrative hold alone does not constitute a setoff and is not prohibited by § 362(a)(7). *In re Homan,* 116 B.R. 595, 602 (Bankr.S.D.Ohio 1990).

■ Whether, in general, an administrative freeze violates the automatic stay is a matter of much dispute. Using various rationale, many courts hold that an administrative freeze does violate the automatic stay. *Homan,* 116 B.R. at 605; *United States v. Reynolds,* 764 F.2d 1004 (4th Cir. 1985); *In re Wildcat Constr. Co., Inc.,* 57 B.R. 981 (Bankr.D.Vt.1986); *In re Rio,* 55

B.R. 814 (Bankr.M.D.Ala.1985); *In re Executive Associates, Inc.,* 24 B.R. 171 (Bankr. S.D.Tex.1982); *United States v. Norton,* 717 F.2d 767 (3rd Cir.1983); *In re Cusanno,* 17 B.R. 879 (Bankr.E.D.Pa.1982) (*Norton* and *Cusanno* rely on Pennsylvania law where setoff occurs at the time sufficient evidence of intent to setoff is manifested, a definition which is contrary to the Sixth Circuit definition found in *Baker*). Other courts hold that an administrative freeze does not violate the automatic stay. *In re Edgins,* 36 B.R. 480 (Bankr. 9th Cir.1984); *Kenney's Franchise Corp. v. Central Fidelity Bank,* 22 B.R. 747 (W.D.Va.1982); *In re Air Atlanta, Inc.,* 74 B.R. 426 (Bankr.N.D.Ga.1987) *aff'd,* 81 B.R. 724 (N.D.Ga.1987); *In re Williams,* 61 B.R. 567 (Bankr.N.D.Tex.1986); *In re Hoffman,* 51 B.R. 42 (Bankr.W.D.Ark.1985); *In re Carpenter,* 14 B.R. 405 (Bankr.M.D.Tenn. 1981). The issue has also been the subject of much discussion in commentaries and scholarly journals. 2 King, *Collier on Bankruptcy* § 362.04[7] (15th ed. 1990) (although noting contrary authority, this commentator states that "it should be clear that a simple administrative hold by a bank creditor pending a resolution of a request for relief under § 362(d) will not violate the automatic stay"); Groschadl, *"Freezing" the Debtor's Bank Account: a Violation of the Automatic Stay?,* 57 Am.Bankr.L.J. 75 (1983); Note, *Freeze and Recoupment: Methods for Circumventing the Automatic Stay?,* 5 Bankr.Dev.J. 85 (1987); Weintraub & Resnick, *Freezing the Debtor's Account: a Banker's Dilemma under the Bankruptcy Code,* 100 Banking L.J. 316 (1983); Williams, *Application of the Cash Collateral Paradigm to the Preservation of the Right to Setoff in Bankruptcy,* 7 Bankr.Dev.J. 27 (1990). Finally, this Court notes with some embarrassment that in the past it has been persuaded by arguments on both sides of this issue. *In re Learn,* 95 B.R. 495, 496 (Bankr.N.D.Ohio 1989) ("... this Court does not view an administrative hold to be violative of the automatic stay. We believe the better rationale is that an administrative freeze simply preserves the status quo until the rights of the

parties may be judicially determined." (citing *Rio, supra* )). *But see, In re Woloschak Farms,* 74 B.R. 261, 264 (Bankr.N.D.Ohio 1987) (a creditor's withholding a portion of payment owed to debtor until court made a determination as to setoff violated the automatic stay and required imposition of sanctions (citing *Cusanno, supra* )).

Those courts which find that an administrative hold does not violate the automatic stay emphasize that such action is not specified in § 362(a) and that banks must be able to protect their rights of setoff which are preserved by §§ 553 and 542(b).[1] Courts reaching the opposite conclusion emphasize the importance and broad scope of the automatic stay, especially § 362(a)(3), and the fact that, at least from the debtor's standpoint, an extended administrative hold is tantamount to a completed setoff. Upon review, this Court finds the latter to be the more persuasive argument. Particularly instructive is Judge Waldron's thorough discussion of this topic in *In re Homan,* 116 B.R. 595 (Bankr.S.D.Ohio 1990). After concluding that an administrative hold did not violate § 362(a)(7), Judge Waldron considered whether such an action violates § 362(a)(3) which prohibits "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." Judge Waldron favorably noted the opinion in *Wildcat Constr.,* which held that "perhaps the most fundamental prob-

lem with countenancing the freezing of the debtor's bank accounts before any judicial determination of the rights of the parties has been made is that it begs the critical question, assuming in advance the precondition for its validity.... The freeze is essentially an extra-judicial temporary restraining order." *Wildcat Constr.,* 57 B.R. at 981 *quoted in, Homan,* 116 B.R. at 603. Judge Waldron then concluded:

> A creditor cannot assert some interest in the debtor's funds on deposit and resort to self-help to preserve that claimed interest. Rather, the required course of action, mandated by the Code, is for the creditor to initiate a filing to obtain relief from the automatic stay.

> · · · · ·

> Freezing a debtor's account can create significant economic havoc for a debtor who is attempting to reorganize in order to obtain the relief contemplated by Chapters 11 or 12 and can have an even more immediate and disastrous result upon an individual debtor's efforts to obtain the relief contemplated by Chapter 13.

*Homan,* 116 B.R. at 603.

Funds on deposit and subject to a right of setoff constitute cash collateral pursuant to § 363(a) which the debtor-in-possession may not use without the bank's consent or court authorization. 11 U.S.C. § 363(c)(2).[2] In *Homan,* Judge Waldron

---

**1.** 11 U.S.C. § 553(a) provides in part:

Except as otherwise provided in this section and in sections 362 and 363 of this title [11 USCS §§ 362 and 363], this title [11 USCS §§ 101 et seq.] does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title [11 USCS §§ 101 et seq.] against a claim of such creditor against the debtor that arose before the commencement of the case....

11 U.S.C. § 542(b) provides:

Except as provided in subsection (c) or (d) of this section, an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee, except to the extent that such debt may be offset under section 553 of this title [11 USCS § 553] against a claim against the debtor.

**2.** 11 U.S.C. § 363.

(a) In this section, "cash collateral" means cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property subject to a security interest as provided in section 552(b) of this title [11 USCS § 552(b) ], whether existing before or after the commencement of a case under this title [11 USCS §§ 101 et seq.].

· · · · ·

(c)(1) If the business of the debtor is authorized to be operated under section 721, 1108, 1304, 1203, or 1204 of this title [11 USCS § 721, 1108, 1304, 1203, or 1204] and unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice of a hearing, and may use property of the estate in the ordinary course of business without notice of a hearing.

considered the argument that a bank is acting in accordance with these Code sections by placing an administrative hold on the debtor's accounts, and he held that "while such an argument could be persuasive in a Chapter 11 proceeding, this argument ... is not equally applicable to the vast majority of Chapter 13 . cases, which are consumer, not business, filings." *Homan*, 116 B.R. at 604. In the present Chapter 11 case, it is true that the cash collateral provisions have a significant impact on the DIP's actions, as discussed below. Nonetheless, this Court is not persuaded by the argument that because a bank may be acting in conformity with one policy of the Bankruptcy Code, its actions are exempt from other provisions of the Code. Moreover, the imposition of an administrative hold is generally absolute, applying to the entire account balance in each of the debtor's accounts, whereas the bank's security interest in those accounts is limited to the extent of its right of setoff. 11 U.S.C. §§ 363(a), 506(a), 553. In the event that the bank's right of setoff is less than the balance of the deposit account, a bank which unilaterally freezes the debtor's account reaches far beyond its rights in the cash collateral of the debtor. In this situation, the bank's exercise of control over property of the estate would be more egregious than in the present case and clearly within the scope of actions prohibited by the automatic stay. This is an example of the type of "self-help" or "extra-judicial" determinations which the *Homan* and *Wildcat Constr.* courts sought to avoid.

For the foregoing reasons, this Court finds that the administrative hold placed on the DIP's account by Western Reserve Bank in the present case is a violation of the automatic stay. 11 U.S.C. § 362(a)(3). There is no assertion that Western Reserve had actual knowledge of the bankruptcy filing or that it acted willfully; therefore, this Court will not consider the issue of sanctions pursuant to § 362(h).

This Court recognizes the practical difficulties which this decision will present to financial institutions. Nonetheless, this Court, like Judge Waldron, "is not persuaded that the Code sections under discussion place a financial institution in a situation from which it cannot escape without resort to self-help." *Homan*, 116 B.R. at 605. Just as debtors-in-possession often come before the court on an "expedited" or "emergency" basis for a determination regarding the use of cash collateral, there are also provisions in the Bankruptcy Code and Rules for the expeditious consideration of a motion for relief from stay. Bankruptcy Rule 4001(a)(3) provides for *ex parte* relief from stay where immediate and irreparable injury, loss, or damage will result. Although it is burdensome to financial institutions to seek relief from stay before imposing an administrative hold, this procedure ensures that the relative rights of parties to a deposit account will be judicially determined before any action is taken which might impair those rights. This Court's decision removes the element of self-help from the early stages of a bankruptcy proceeding and is consistent with the plain language of 11 U.S.C. § 362(a)(3).

Although this Court's conclusion with respect to the automatic stay is significant and will have an impact on future cases before the Court, its practical effect in the present case is minimal. This is due to the second issue before the Court, the extent of Western Reserve's right of setoff in the DIP's deposit accounts.

■ As noted above, a bank's right of setoff is preserved under the Bankruptcy Code pursuant to § 553. In addition, deposit accounts in which the Bank has an interest are defined as "cash collateral" by § 363(a). The Bank has a secured claim to the extent of its right of setoff which is exempt from the turnover provisions of the Code. 11 U.S.C. §§ 506(a), 542(b). A debt-

---

(2) The trustee may not use, sell, or lease cash collateral under paragraph (1) of this subsection unless—
(A) each entity that has an interest in such cash collateral consents; or

(B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

or-in-possession is prohibited from using cash collateral without court approval or the consent of the party which holds the interest in the cash collateral. 11 U.S.C. § 363(c)(2). Therefore, the DIP in the present case may not use any funds on deposit with Western Reserve in which Western Reserve has a right of setoff, unless Western Reserve consents or this Court authorizes such use.

The DIP makes two alternative arguments against Western Reserve's right of setoff. The Court is not persuaded by the DIP's first argument that there was no right of setoff to the extent that the entire amount of DIP's obligations were not due at the time the Petition was filed. Western Reserve's brief demonstrates that the obligations were in default and subject to acceleration at the time of filing. Furthermore, § 553 clearly contemplates a "netting" process where the aggregate claims of the parties are netted against one another.

■ Next, the DIP asserts that, pursuant to Ohio law, Western Reserve has no right of setoff with respect to the payroll account which the DIP claims is a special deposit or a deposit for a special purpose. This argument is largely irrelevant, however. The bankruptcy estate acquired an interest in the deposit accounts at the moment the Petition was filed. 11 U.S.C. § 541. Therefore, the vast majority of the funds in question became a cash collateral at that moment. The DIP's argument that the current balance of the payroll account of Seven Thousand Six Hundred Thirty-One and 17/100 Dollars ($7,631.17) is not subject to a right of setoff is misplaced, because it includes the DIP's *post-petition* transfer of Seven Thousand Six Hundred Dollars ($7,600.00) from its general account to the payroll account. This transfer constituted a use of cash collateral without the consent or authorization required by § 363(c)(2). With the exception of the Thirty-one and 17/100 Dollars ($31.17) in the payroll account at the time the Petition was filed, the remainder of the moneys (Nine Thousand Nine Hundred Ninety-One and 32/100 Dollars ($9,991.32) according to our

calculations) constitutes cash collateral in which Western Reserve has a right of set-off.

■ Taking the DIP's Motion as a motion to use cash collateral, it appears that the agreement of the parties (as reflected in this Court's November 5, 1990 Order) constitutes the consent of Western Reserve to use cash collateral as required by § 363(c) or, alternatively, that the granting of the replacement lien in the amount of Ten Thousand One and 49/100 Dollars ($10,001.49) provides adequate protection to Western Reserve as contemplated by § 363(e). Therefore, this Court's November 5, 1990 Order will continue in effect unless the parties notify the Clerk of this Court, pursuant to the Order entered this date, that a final hearing on the use of cash collateral is required.

■ Finally, the Court notes that not only was the DIP's transfer of funds between accounts an unauthorized use of cash collateral but the purpose for which the funds were transferred also lacked the requisite Court authorization. The funds transferred to the payroll account one day after the Petition was filed apparently were used to pay pre-petition wages, although none of the pleadings presently before the Court addresses this issue. The payment by a debtor-in-possession of pre-petition claims outside of a confirmed plan of reorganization is generally prohibited by the Bankruptcy Code, and such transfers are recoverable. 11 U.S.C. § 549. A general practice has developed, however, where bankruptcy courts permit the payment of certain pre-petition claims, pursuant to 11 U.S.C. § 105, where the debtor will be unable to reorganize without such payment. *See, In re Chateaugay Corp.*, 80 B.R. 279 (S.D.N.Y.1987); *In re Structurlite Plastics Corp.*, 86 B.R. 922 (Bankr. S.D.Ohio 1988). This Court often permits the payment of pre-petition wages so that the debtor-in-possession may maintain an effective work force, especially where the amount of the payment is relatively small and where it appears that the wages being paid would ultimately qualify as priority claims. *See,* 11 U.S.C. § 507(a)(3). But in

no event may such payments be made *without prior authorization from the bankruptcy court.* If it appears to this Court that other unauthorized transfers of property of the estate are being made in this case, *see,* 11 U.S.C. § 549, the Court will appoint a trustee to manage the business of the DIP pursuant to 11 U.S.C. § 1104.

An appropriate order shall issue.

## ORDER

The matter before the Court is the Motion of the Debtor-in-Possession ("DIP") for an order releasing an administrative hold or in the alternative to use cash collateral and this Court's November 5, 1990 Order granting a replacement lien subject to further consideration. For the reasons stated in the accompanying Memorandum Opinion, the Motion is taken as a motion to use cash collateral, and it is sustained in part. This Court's November 5, 1990 Order shall remain in effect unless the DIP or Western Reserve Bank files with the Clerk of this Court, within fourteen (14) days of the date of this Order, a request for a final hearing on the use of cash collateral.

IT IS SO ORDERED.