**In re Larry J. LIVELY and Karen E. Lively, Debtors.**

**No. 97–03447–M.**

United States Bankruptcy Court, N.D. Oklahoma.

June 11, 1998.

of Appeals in that case, 479 F.2d 990, 997 (2d Cir.1973). The Court found the purpose in enacting the statute was "to regulate garnishment in its usual sense as a levy on periodic payments of compensation needed to support the wage earner and his family on a week-to-week, month-to-month basis." *Id. See also, Usery v. First National Bank of Arizona,* 586 F.2d 107, 110 (9th Cir.1978) (relying on *Kok-oszka* in evaluating whether a bank account had "an element of periodicity [or] the critical relationship to a person's subsistence that a paycheck does").

These brief citations and observations are not meant to resolve the exemption issue, but merely to highlight the problems with a settlement that ascribes no value whatsoever to the Trustee's objection.

Karen Carden Walsh, Tulsa, OK, for debtors.

## MEMORANDUM OPINION

TERRENCE L. MICHAEL, Chief Judge.

THIS MATTER comes on for consideration pursuant to the Court's own motion. It has come to the attention of the Court that Larry J. Lively and Karen E. Lively, Debtors herein ("Debtors"), have made certain payments to pre-petition creditors without Court approval. The issue before the Court is whether such payments are appropriate. For the reasons set forth herein, this Court shall enter an order prohibiting any such future payments. The Court will also establish deadlines by which certain actions must be taken by the Debtors.

### Background

Debtors filed a petition for relief under Chapter 13 of the United States Bankruptcy Code on July 28, 1997. On September 4, 1997, Debtors moved this Court for an order converting this case to a case under Chapter 11 of the Bankruptcy Code. *Docket No. 10.* On October 14, 1997, after notice and a hearing, this Court granted the motion to convert. *Docket No. 21.*

On November 25, 1997, this Court held a status conference in this case. At said status conference, the Court was advised that the Debtors anticipated it would take approximately ninety (90) days to resolve certain issues between the Debtors and the United States of America, acting through the Internal Revenue Service (the "IRS"), and an additional twenty (20) days to file a plan and disclosure statement. On the basis of those time frames, the Court expected a plan and disclosure statement to be filed in this matter sometime in March of 1998. As of the date of this Memorandum Opinion, no plan or disclosure statement has been filed.

The Court, based upon its own review of the monthly operating reports filed by the Debtors, determined that there was a possibility that Debtors had made payments to satisfy a portion of their pre-petition debt. Accordingly, on April 6, 1998, this Court entered its Order for Hearing, directing Debtors, their counsel and the Office of the United States Trustee to appear and explain the status of this case. The Order also directed the parties to be prepared to address the issue of whether payments had been made on pre-petition debt. *Docket No. 46.* On April 27, 1998, the Office of the United States Trustee filed

its "Report on Debtors' Payment of Pre–Petition Debt" (the "UST Report"). *Docket No. 51.* The UST Report contained the following information:

2. From a review of the Monthly Operating Reports filed herein by the Debtor–in–Possession, it appears that payments were made to "Credit Bureau" in the total amount of $210.00 during the period 12/6/97 through 3/18/98. Upon inquiry by the United States Trustee, the Debtor (Karen Lively) advised such payments were for an old (pre-petition) dentist bill owed by the Debtor (Larry Lively) in the approximate amount of $350.00 at the time of Debtors' filing bankruptcy.

. . .

5. The December 1997 Monthly Operating Report showed a payment to J.D. Stotts in the amount of $171.50. Mr. Stotts is an accountant authorized by the Court on January 20, 1998 to perform services for the Debtors. Debtors' application to employ Mr. Stotts filed January 20, 1998 stated that Mr. Stotts had been assisting the Debtors as an accountant prior to the filing of the bankruptcy proceeding, but Debtors' Schedules D, E and F do not list any debts owed to Mr. Stotts at the time of the Debtors' filing bankruptcy.

6. Debtors have made monthly payments to Ford Motor Credit (approximately $410.00 monthly) and to NationsBank (approximately $610.00 monthly) for pre-petition secured debt on Debtors' automobiles.

*Docket No. 51,* paragraphs 2, 5 and 6. The UST Report confirmed the concerns of the Court regarding payments made by the Debtors.

A hearing on the status of this case was held on May 7, 1998. Debtors appeared personally and through their attorneys Stephen Riley and Karen Carden Walsh. Also appearing was Paul Thomas on behalf of the Office of the United States Trustee. The Court heard argument and was advised that no factual dispute existed as to the statements contained in the UST Report. The Court made direct inquiry of all counsel regarding the propriety of making payments on pre-petition debt as well as making unauthorized payments to a professional employed by the Debtors when such payments had not been approved by the Court. At the conclusion of the May 7, 1998, hearing, the Court ordered counsel for the Debtors to provide the Court with copies of the operative documents executed by the Debtors with respect to their obligations owed to Ford Motor Credit Company ("Ford") and NationsBank and also provided all parties with an opportunity to brief the issue of the propriety of said payments. On May 20, 1998, Debtors filed with the Court copies of the operative documents executed by the Debtors in favor of Ford and NationsBank. *Docket No. 60.* On May 22, 1998, Debtors filed a document entitled "Report to the Court" (the "Debtors' Report"). *Docket No. 61.*

The Court has reviewed those documents. The transaction between Debtors and Ford involves a new 1997 Ford F–150 Truck (the "Truck"). Under the terms of the documents executed by and between Debtors and Ford (hereafter referred to for purposes of simplicity as "the Lease"), Debtors were granted the use and enjoyment of the Truck for a period of twenty-four months. The Lease, executed June 10, 1996, expires by its own terms June 10, 1998, a date which is now in the past. The Lease calls for twenty-four payments of $402.44 per month, with the first payment due July 10, 1996. Debtors have made at least nine such payments since this case has been filed, none with Court approval.

The transaction between the Debtors and NationsBank is a secured transaction. It is memorialized in a note and security agreement through which Debtors borrowed the sum of $27,350.00 in order to enable them to purchase a 1995 Mercury Grand Marquis (the "Mercury"). Under the terms of the promissory note, Debtors are to make monthly payments of $583.82 for a period of five years from and after September 19, 1995. Interest accrues on this obligation at the rate of 10.330% per annum.

Other than the payments described above, Debtors have indicated they have made no payments to pre-petition creditors. No orders for adequate protection have been entered in this case with respect to these creditors. In addition, this Court has not authorized payment of any sums to Mr. Stotts, Ford or NationsBank.

### Decision

Debtors have chosen (either with or without the advice of counsel) to make payments on certain pre-petition debt and lease obligations without Court approval. Such conduct is intolerable. The Debtors' Report appears to be little more than an after-the-fact attempt to justify their conduct. For the reasons set forth herein, the Debtors will be ordered to cease all such payments. The Debtors will also be ordered to seek to recover all payments made to the Credit Bureau, Ford and NationsBank. Debtors must also file a plan and disclosure statement on or before July 15, 1998. Should Debtors fail in any of these efforts, the Court will consider appointment of a trustee, conversion or dismissal of this case.

### Discussion

█ It is undisputed that Debtors have made post-petition payments on pre-petition debt without the approval of this Court. The United States Court of Appeals for the Tenth Circuit has expressly ruled that such payments are forbidden:

> A fundamental tenet of bankruptcy law is that a petition in bankruptcy operates as a "cleavage" in time. Once a petition is filed, debts that arose before the petition may not be satisfied through post-petition transactions.

*In re B & L Oil Company,* 782 F.2d 155, 158 (10th Cir.1986) (hereafter *"B & L"*). The position taken by the Tenth Circuit in *B & L* is reflective of the majority position on this issue. *See In re Holly's, Inc.,* 140 B.R. 643, 676 (Bankr.W.D.Mich.1992) (and cases cited therein); *In re Hoffman,* 51 B.R. 42, 46 (Bankr.W.D.Ark.1985); *In re Isis Foods, Inc.,* 37 B.R. 334, 337 (W.D.Mo. 1984).[1]

In addition, there are cases which state that the **Court** (not the Debtors) may use its equitable powers provided under 11 U.S.C. § 105 (West 1998)[2] to allow for payment to certain pre-petition creditors in exceptional circumstances. *See In re NVR L.P.,* 147 B.R. 126, 128 (Bankr.

---

1. In its own research, the Court was able to locate two cases which stand for the proposition that a debtor may continue to pay pre-petition secured debt after the filing of the bankruptcy petition. *See In re Maun,* 95 B.R. 94, 96 (Bankr.S.D.Ill.1989); *In re Ford,* 61 B.R. 913, (Bankr.W.D.Wis.1986). In each of those cases, the court, without citing any authority, stated that the power granted the debtor under § 1108 of the Bankruptcy Code to operate his business inherently included the power to pay the pre-petition secured debt of his choice. This Court respectfully dis-

agrees; in any event, controlling authority in this circuit is to the contrary. *See B & L,* 782 F.2d at 158. The Court assumes that since Debtors did not cite either the *Maun* or *Ford* decisions to the Court, they did not rely upon those decisions to justify their actions.

2. Unless otherwise noted, all statutory references are to sections of the United States Bankruptcy Code, 11 U.S.C. § 101 *et. seq.* (West 1998).

E.D.Va.1992) (court may authorize payment of pre-petition debt when "compelling business justification" exists); *In re Structurlite Plastics Corp.*, 86 B.R. 922, 929–933 (Bankr.S.D.Ohio 1988) (refusing to authorize payment of pre-petition medical claims of debtor's employees); *In re Quality Interiors, Inc.*, 127 B.R. 391, 396–397 (Bankr.N.D.Ohio 1991) (hereafter *"Quality Interiors"*) (refusing to sanction unauthorized payment of pre-petition wage claims by debtor). As the Court noted in *Quality Interiors:*

> The payment by a debtor-in-possession of pre-petition claims outside of a confirmed plan of reorganization is generally prohibited by the Bankruptcy Code, and such transfers are recoverable. 11 U.S.C. § 549. A general practice has developed, however, where bankruptcy courts permit the payment of certain pre-petition claims, pursuant to 11 U.S.C. § 105, where the debtor will be unable to reorganize without such payment. *See, In re Chateaugay Corp.*, 80 B.R. 279 (S.D.N.Y.1987); *In re Structurlite Plastics Corp.*, 86 B.R. 922 (Bankr.S.D.Ohio 1988). This Court often permits the payment of pre-petition wages so that the debtor-in-possession may maintain an effective work force, especially where the amount of the payment is relatively small and where it appears that the wages being paid would ultimately qualify as priority claims. *See*, 11 U.S.C. § 507(a)(3). But in no event may such payments be made **without prior authorization from the bankruptcy court.** If it appears to this Court that other unauthorized transfers of property of the estate are being made in this case, *see*, 11 U.S.C. § 549, the Court will appoint a trustee to manage the business of the DIP pursuant to 11 U.S.C. § 1104.

*Quality Interiors*, 127 B.R. at 396–397 (emphasis in original). The Court need not reach the issue of whether such payments are permitted in this circuit in light of *B & L;* these cases are cited merely to illustrate that even in circumstances where payment of pre-petition debt is allowable, it may **never** be done without court approval.[3]

### *Payment to "Credit Bureau"*

■ Debtors acknowledge that they have paid $210.00 on certain pre-petition dentist bills to an entity identified only as "Credit Bureau." Debtors' Report acknowledges that said payments "were not proper and there is no authority to support the payment of the same." *Docket No. 61*, ¶ *1.* That being the case, it is incumbent upon the Debtors to recover said payments. Section 549(a) of the Bankruptcy Code provides authority for a trustee to recover post-petition transfers of property of the estate that are not authorized by this Court. *See* 11 U.S.C. § 549(a)(2)(B) (West 1998).[4]

3. In oral argument at the May 7, 1998, hearing, counsel for the Debtors and for the office of the United States Trustee represented to the Court that it had been the practice under the prior judge to allow such payments. They could not cite any instance of such a thing being allowed, nor have they been able, in the time allotted, to provide any authority or examples to support such a statement. This Court finds it inconceivable that its predecessor, the former Chief Bankruptcy Judge of this District, would be unaware of or deliberately ignore controlling authority on any issue, let alone one so fundamental to the administration of bankruptcy cases. This is not the first time that cries of "Your predecessor let us do this" have been heard by this Court, and it will probably not be the last. In any event, unless the parties making such arguments come into court armed with citations, such statements are unpersuasive.

4. It is anticipated that Debtors will argue this section is inapplicable as the earnings which they used to make this payment do not constitute property of the estate. That may or may

*Payments to Ford*

■ Since the inception of this case, Debtors have made monthly payments of $402.44 to Ford under the terms and provisions of the Lease. The Lease provides Debtors with the use and enjoyment of the Truck, which appears to be a rather expensive motor vehicle.[5] In the Debtors' Report, Debtors argue that "[s]ection 365(d)(10) arguably requires that the Debtors continue making their lease payments to FMC."[6] *Docket No. 61,* ¶ 5. Unfortunately, Debtors and their counsel have completely misread this section.

Section 365(d)(10) of the Bankruptcy Code provides as follows:

> The trustee shall timely perform all of the obligations of the debtor, except those specified in section 365(b)(2), first arising from or after 60 days after the order for relief in a case under chapter 11 of this title under an unexpired lease of personal property (*other than personal property leased to an individual primarily for personal, family, or household purposes*), until such lease is assumed or rejected notwithstanding section 503(b)(1) of this title, unless the court, after notice and a hearing and based on the equities of the case, orders otherwise with respect to the obligations or timely performance thereof. This subsection shall not be deemed to affect the trustee's obligations under

the provisions of subsection (b) or (f). Acceptance of any such performance does not constitute waiver or relinquishment of the lessor's rights under such lease or under this title.

§ 365(d)(10) (emphasis added). There can be little doubt that the Truck constitutes "personal property leased to an individual primarily for personal, family or household purposes." Section 15 of the Lease prohibits the use of the Truck "as a private or public carrier." Accordingly, Section 365(d)(10) provides no refuge for these Debtors. Even were it applicable, § 365(d)(10) authorizes the performance of such lease obligations "sixty days after the order for relief in a case under chapter 11 of this title." This section did not apply while Debtors were in Chapter 13 and only applied, if at all, sixty days after the order of conversion. However, these Debtors have made payments to Ford without interruption since the filing of their original Chapter 13 case.

*Payment to NationsBank*

■ The payments made to Nations-Bank are even more problematic. Since the filing of this case, NationsBank has received a payment of $583.30 per month. In effect, Debtors have made unauthorized post-petition payments so that they may keep possession of a 1995 Mercury Grand Marquis, a vehicle with an original pur-

---

not be true. At least some of the payments at issue were made prior to the conversion of this case from Chapter 13 to Chapter 11. Pursuant to § 1306, Debtors' earnings for services performed after the commencement of the Chapter 13 case but before its conversion to a case under Chapter 11 constitute property of the estate. *See* § 1306(a)(2). Debtors thus have a vehicle to recover at least some of the monies which have been advanced. In addition, the Court has the ability to exercise the equitable powers granted to it under § 105 of the Bankruptcy Code to allow for the recovery of such payments.

**5.** The Lease lists the purchase price of the Truck as $23,804.30, and states that the Truck was new at the time of the transaction.

**6.** In the Debtors' Report, Debtors offered no legal authority for their actions other than § 365(d)(10). They were invited to submit to the Court whatever authority they could find to support their position. The Court assumes they found none.

chase price of not less than $26,053.00.[7] In support of their conduct, Debtors state that

> Section 363 of the Bankruptcy Code provides that creditors may be entitled to adequate protection payments if the collateral is being used without its consent. The debtors continue to make their regular payments to forestall an adequate protection problem.

*Docket No. 61*, ¶ 4. Apparently, Debtors and their counsel believe that they have the right to determine who receives adequate protection and in what amount, without the involvement of or any interference by this Court. They are mistaken.

Section 363(c)(1) of the Bankruptcy Code provides that

> If the business of the debtor is authorized to be operated under section 721, 1108, 1203, 1204, or 1304 of this title and unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

§ 363(c)(1). Under this section, when an individual debtor is in a Chapter 11 case, he or she may use property of the estate in the ordinary course of their business. Debtors have indicated that they use the motor vehicles at issue for basic transportation and in order to travel to and from their places of employment. Each of these uses appear to be in the ordinary course of their business. The next question is whether the creditors holding an interest in those motor vehicles are entitled to

receive payments while the bankruptcy case is pending. This question brings the concept of adequate protection into play. Section 363(e) of the Code reads as follows:

> Notwithstanding any other provision of this section, at any time, *on request of an entity that has an interest in property used,* sold, or leased, or proposed to be used, sold, or leased, by the trustee, *the court,* with or without a hearing, shall prohibit or condition such use, sale or lease as is necessary to provide adequate protection of such interest. This subsection also applies to property that is subject to any unexpired lease of personal property (to the exclusion of such property being subject to an order to grant relief from the stay under section 362).

§ 363(e) (emphasis added). Under this section, the concept of adequate protection is triggered **when a party requests the same from the court.** Once so requested, the court, with or without notice and a hearing (as may be appropriate under the circumstances), considers the issue, and orders adequate protection if the facts require it.

If the parties agree as to the form and manner of adequate protection to be provided, Bankruptcy Rule 4001(d) comes into play. Under that section, a motion for approval of the adequate protection agreement and the agreement itself must be served on any creditors committee or, if no committee is appointed, to the list of twenty largest creditors and upon such other entities as the court may direct. *See Fed. R.Bankr.P. 4001(d).*[8] The purpose of this

---

7. This figure is found in the certificate of title as the final destination price or as the "F.D. Price."

8. For a more complete outline of the notice and hearing procedure to be followed with

respect to agreements for adequate protection, *see* 9 King *et al., Collier on Bankruptcy* ¶ 4001.07[2] (1998).

requirement is to ensure that: (1) those who have an interest in the matter have notice of the proposed agreement; and (2) that the proposed agreement is reviewed and approved by the court prior to its implementation. By ignoring the operative provisions of the Bankruptcy Code, Debtors have eliminated these procedural safeguards.

The Court takes great issue with the position of the Debtors that these payments were made in the ordinary course of their business and, as such, are appropriate. What the Debtors have done is make post-petition payments on pre-petition debt. There is no showing that the payments were appropriate or that adequate protection was required. Debtors have chosen to provide preferential treatment to these creditors they have paid. Debtors' counsel, who, in their application, profess to the Court their proficiency in Chapter 11 cases and knowledge of the Bankruptcy Code, have failed to honor and implement one of its most basic provisions, ignoring controlling authority in the process.

The money which Debtors have paid to these pre-petition creditors should be recovered for the benefit of all creditors to be distributed through the implementation of a Chapter 11 plan.[9] This Court is unwilling to allow "adequate protection" payments to be presented to it as a *fait accompli* and have any party suggest that, since the payments have already been made, the Court is compelled to approve them. In the Debtors' Report, Debtors indicate their intention to file a request for adequate protection if the Court finds that payments which they have made were not appropriate. While the Court will review the merits of any adequate protection request if and when such request is made,

the Court wishes to clearly state that any agreement which would call for the ratification of payments already made will be subject to exceptionally strict scrutiny.

## Filing of a Plan

In the initial scheduling conference held in this matter in late November of 1997, Debtor indicated they expected to file a plan no later than March of 1998. To date, no plan or disclosure statement have been filed. It is possible that some of the problems which exist in this case today would not exist had the case been moved more expeditiously. Accordingly, the Court will, on its own motion, set July 15, 1998, as the deadline for the filing of a plan and disclosure statement in this case. If a plan and disclosure statement are not timely filed, the Court will consider dismissal of the case, appointment of a trustee or conversion to a case under Chapter 7 of the Bankruptcy Code.

### Conclusion

■ Debtors are not free to choose which of their pre-petition creditors they pay. To allow such conduct would destroy the integrity of the bankruptcy system. *See, e.g., In re Structurlite Plastics Corp.,* 86 B.R. at 932 ("... permitting the Chapter 11 debtor to selectively pay pre-petition indebtedness serves to create priorities among the general unsecured creditor body that are inconsistent with distributive scheme envisioned by § 507"). Creditors who are able to exert the most pressure outside the auspices of the court would be in the best position to receive a larger distribution or a larger payment. In addition, creditors which have liens on assets which are near and dear to the debtors' hearts (such as here, two late model expensive motor vehicles) are more likely to

---

9. Debtors and their counsel may argue that it does not make economic sense to recover the payments which have been made, given the

costs of litigation. This issue is best left to the Court at the time counsel for the Debtors seek an award of fees and expenses.

obtain payment. The Debtors have breached their fiduciary duty to all creditors in this case through such unauthorized payments. The Court will not tolerate such conduct. Debtors must either recover the funds expended or risk dismissal, appointment of a trustee or conversion to Chapter 7 of the Bankruptcy Code. In addition, Debtors must immediately move this case toward confirmation of a Chapter 11 plan.

A separate order in accordance with this Memorandum Opinion is entered concurrently herewith.